IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARILYN PRESTON-KILLINGHAM,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, a/k/a WMATA,<br><br>Defendant. | Civil Action No. 1:06-CV-00074 (AK)<br><br>Magistrate Judge Alan Kay<br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT

Marilyn Preston-Killingham ("Plaintiff"), through the undersigned attorneys below, alleges the following against Washington Metropolitan Area Transit Authority ("Defendant" or "WMATA"), based upon personal knowledge as to her own acts, and as to all other matters, based on information and belief after reasonable investigation.

### INTRODUCTION

1. This case arises from physical and emotional injuries Plaintiff sustained while attempting to exit a Red Line Metrorail train in her wheelchair at the Gallery Place Metro station on Christmas Day, 2003. As Plaintiff was trying to exit the train that day, the train doors suddenly — and without warning — closed and pinned Plaintiff between the doors in her wheelchair. Despite the panicked attempts of by-standers and her traveling companion to free her from the doors, Plaintiff was trapped between the Metrorail car doors and unable to free herself or exit the train. At no time did any WMATA employee come to Plaintiff's aid or notice that Plaintiff was trapped and in need of help. Plaintiff thus brings this action against WMATA

to recover for physical and emotional injuries she sustained as a direct result of the negligent conduct, and failures to act, of WMATA and its employees.

## THE PARTIES

### A. The Plaintiff.

2. Plaintiff, Marilyn Preston-Killingham, is a resident of the District of Columbia.

3. On Good Friday, 1974, Plaintiff was severely injured in an accident involving two cars. On that day, while standing with her son near a parked car, another car backed directly into Plaintiff, narrowly missing her son and pinning Plaintiff between the bumpers of the two cars. Plaintiff was severely injured and, since that day, left severely disabled. Plaintiff has been forced to use a wheelchair or crutches since that time and often uses a motorized wheelchair (called a "Lark").

4. Despite her disability, Plaintiff has been an active member of the community and has participated in various civil rights and other humanitarian causes. Plaintiff has been active in a number of social and civic organizations and has been a vocal advocate for civil rights and the rights of the disabled in the District of Columbia. Plaintiff is thus frequently asked to attend, and often to address, meetings, gatherings, and other functions throughout the District and, in fact, throughout the country.

5. Before Plaintiff was injured while using the Metrorail system on Christmas Day, 2003, Plaintiff relied on the Metrorail system for a convenient, inexpensive, and independent means of transportation.

### B. The Defendant.

6. Defendant, Washington Metropolitan Area Transit Authority, or WMATA, is an agency created by the Washington Metropolitan Area Transit Regional Compact ("the Compact").

7. WMATA operates a comprehensive mass transit system, which includes Metrorail, MetroAccess, and Metrobus, for the District of Columbia and certain suburban areas of Maryland and Virginia.

8. WMATA offers public transportation of passengers and is a common carrier within the meaning of D.C. Code § 34-203.

9. WMATA operates the Metrorail train system and is responsible for the training of all WMATA personnel, including Metrorail train operators, in the safe operation of WMATA transportation equipment such as the Metrorail trains.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to D.C. Code Ann. § 9-1107.01(81) and 28 U.S.C. § 1331.

11. Venue in this Court is proper, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the allegations in this Amended Complaint occurred within this judicial district.

## WMATA'S NEGLIGENCE CAUSED INJURY TO PLAINTIFF

12. On Christmas Day 2003, Plaintiff attended a holiday dinner celebration with friends at Union Station in the District of Columbia.  After the celebration, Plaintiff and a friend, Ms. Anise Jenkins, boarded a Red Line train at Union Station traveling in the direction of Shady Grove.  Plaintiff was traveling in a motorized or power assisted wheelchair.  At the Gallery Place Metro station, the Metro doors opened and Plaintiff and Ms. Jenkins attempted to exit the Metrorail train.

13. Ms. Jenkins exited the train car just steps ahead of Plaintiff when the doors, without warning, suddenly closed and pinned Plaintiff in the subway car doorway as she attempted to alight from the train.

14. No warning chimes had sounded to alert either Ms. Jenkins or Plaintiff that the doors were about to close.

15. Plaintiff was trapped in the doorway of the Metrorail car — with half of her motorized wheelchair on the Metrorail platform and the other half stuck in the Metrorail car.

16. Plaintiff's left wrist was pinned between the subway car door and the wheelchair. As Plaintiff struggled to free herself from the doors, passengers inside the subway car and passengers on the platform (including Ms. Jenkins) pushed and pulled on the doors and on the wheelchair in an attempt to free Plaintiff from the doors.

17. While by-standers were attempting to free Plaintiff from the doors, the Metrorail sound system finally chimed "doors closing," indicating that the train operator was preparing to leave the station. By-standers on the platform, including Ms. Jenkins, screamed for help and to get the attention of the Metrorail car driver.

18. At no time during the incident did Metro system personnel come to Plaintiff's aid.

19. Ultimately, the doors released, and Plaintiff was able to exit the train before the train attempted to leave the station.

20. As a result of this incident, Plaintiff suffered an injury to her wrist from being pinned between the door and her wheelchair. In addition, while twisting and turning in an attempt to free herself from the doors, Plaintiff suffered injuries to her back, shoulders and neck.

21. Immediately after being injured, Plaintiff and Ms. Jenkins reported the incident to the WMATA employee on duty at the station kiosk. Plaintiff requested from the WMATA employee on duty a WMATA comment card in order to describe the incident.

22. Plaintiff completed a comment card (describing the incident and providing her telephone number and address) and presented it to the WMATA employee on duty in the kiosk at the Gallery Place station.

23. While she completed the comment card, Metro Transit Police Officer A.M. Loney approached Plaintiff and asked whether she wanted an ambulance.  Not wanting to be hospitalized on Christmas Day, Plaintiff declined to seek immediate medical treatment at that time.  Officer Loney made a report of the incident that detailed some of Plaintiff's injuries. (Attached as Exhibit A).

24. Two days later, on December 27, 2003, after continuing to feel pain in her wrist and stiffness in her back, neck and shoulders, Plaintiff went to the emergency room of Washington Hospital Center.  The emergency room physician prescribed pain medication and recommended Plaintiff seek additional treatment for her injuries.

25. Shortly after her emergency room visit, Dr. Robert Bunning of the National Rehabilitation Hospital treated Plaintiff.  Dr. Bunning ordered, in total, four months of physical therapy at the National Rehabilitation Hospital to relieve the stiffness and soreness triggered by the incident.

26. As a result of being pinned between the Metrorail car doors, Plaintiff has endured significant pain and inconvenience.  She now lives with stiffness and soreness in her neck, shoulders, and back.  Plaintiff is less mobile and often unable to travel to the sorts of events and activities she previously enjoyed.

27. In addition to her physical injuries, Plaintiff has suffered extreme emotional distress and has not been able to make use of the Metrorail system in a motorized wheelchair for fear of becoming trapped again in the doorway of a Metrorail train.  She has thus been deprived a

convenient, inexpensive means of independent travel, and is forced instead to travel by much more expensive means, such as taxicabs.

## COUNT I

(Negligence against Defendant WMATA)

28. Plaintiff realleges and incorporates by reference each of the above Paragraphs 1-27.

29. As a common carrier, Defendant WMATA, by and through its employees, agents, and assigns, had a duty to exercise a reasonable degree of care in providing safe transportation to Plaintiff, and to all of its passengers.

30. WMATA had a specific duty to use such reasonable care in providing safe and convenient means of entering and leaving its Metrorail trains.

31. The operator of the Metrorail train at issue was an employee of WMATA.

32. At all relevant times, the operator of the Metrorail train at issue was acting within the scope of his or her employment.

33. WMATA and its employees owed a duty to Plaintiff and all other passengers to operate the Metrorail train at issue with all the care and caution that a driver of reasonable skill, foresight, and prudence would have exercised in similar circumstances.

34. WMATA and its employee(s) operating the Metrorail train at issue breached the duty of care they owed to Plaintiff in, among others, one or more of the following acts or omissions:

    A.    The failure to exercise reasonable care in closing the train car doors;

    B.    The failure to warn Plaintiff that the train car doors were about to close as she attempted to exit the train;

    C.    The failure to verify that the train car doors were clear before closing them;

    D.    The failure to discover that Plaintiff was pinned between the train car doors; and,

    E.    The failure to assist or otherwise respond in any way while Plaintiff was pinned between the train car doors.

35. Each of these acts and/or failures to act on the part of WMATA and its employee(s) was a breach of the duty they owed to Plaintiff.

36. As a direct and proximate result of the acts and/or failures to act by WMATA and its employee(s), Plaintiff suffered physical and emotional injuries.

37. As a direct result of Defendant's negligence, Plaintiff suffered damages in an amount to be determined at trial.

38. Had WMATA and its employee(s) observed the appropriate standard of care, Plaintiff would not have suffered these injuries and damages.

39. Defendant WMATA is liable for the negligent acts and omissions of its employees committed in the scope of their employment.

40. The safe operation of Metrorail trains is not a discretionary act or governmental function.

41. Plaintiff did not assume the risk of or contribute in any way to her injury and acted with the care of an ordinary reasonable person under like circumstances.

## COUNT II

(Negligence against Defendant WMATA)

42. Plaintiff realleges and incorporates by reference each of the above Paragraphs 1-41.

43. Defendant WMATA had a duty to exercise reasonable care and diligence in maintaining and inspecting its equipment and assuring that its equipment was in proper operating order and free from any condition which may have been dangerous to Plaintiff and the other passengers.

44. The Metrorail train and cars at issue were, at all relevant times, within the exclusive control of WMATA.

45. On information and belief, Defendant WMATA failed to properly maintain and inspect the Metrorail door system.

46. When the system is properly maintained, to a condition of ordinary working order, a familiar chime and "doors closing" announcement indicates, in advance, that the doors to the train will shortly close.

47. Because of WMATA's failure to properly maintain and inspect the Metrorail door system, the warning chime or "doors closing" announcement system malfunctioned and no chimes sounded before Plaintiff attempted to exit the train. The chimes did not sound until after Plaintiff was trapped between the doors.

48. Defendant WMATA's negligence in maintaining and inspecting the subway door system directly and proximately caused Plaintiff physical and emotional injuries.

49. As a direct result of Defendant's negligence, Plaintiff suffered damages in an amount to be determined at trial.

50. Had WMATA observed the appropriate standard of care, Plaintiff would not have suffered these injuries and damages.

51. The safe operation and maintenance of Metrorail trains is not a discretionary act or governmental function.

52. Plaintiff did not assume the risk of or contribute in any way to her injury.

### COUNT III

(Negligent Supervision and Training against Defendant WMATA)

53. Plaintiff realleges and incorporates by reference each of the above Paragraphs 1-52.

54. Defendant WMATA had a duty to adequately supervise employees that it knew or should have known behaved in a dangerous or otherwise incompetent manner.

55. In addition, Defendant WMATA had a duty to exercise reasonable care in training and providing proper instruction, orders, and regulations to its employees.

56. On information and belief, WMATA breached these duties of care in, among others, one of the following acts and/or omissions:

    A.    By failing to adequately supervise the operator of the Metrorail train at issue, who it knew or should have known behaved in a dangerous or otherwise incompetent manner; and

    B.    By failing to exercise reasonable care in providing training, instruction, orders, and/or regulations to its employees, including the Metrorial train operator at issue, regarding

        (i)    the safe operation of the Metrorail train door system and,

        (ii)    the appropriate safety precautions for passengers with disabilities.

57. WMATA's negligent supervision and/or training of its employees directly and proximately caused Plaintiff injuries and damages.

58. Had WMATA observed the appropriate standard of care, Plaintiff would not have suffered these injuries and damages.

59. The supervision and training of employees is not a discretionary act or governmental function.

60. Plaintiff did not assume the risk of or contribute in any way to her injury.

## COUNT IV

(Negligent Hiring and Retention against Defendant WMATA)

61. Plaintiff realleges and incorporates by reference each of the above Paragraphs 1-60.

62. Defendant WMATA has duty to exercise reasonable care in hiring and retaining employees who are fit and competent to perform the services for which they were hired.

63. Pursuant to this obligation, WMATA has a duty not to hire or retain employees to operate its Metrorail trains who are unsafe, careless, imprudent, reckless, and/or dangerous train operators.

64. On information and belief, WMATA breached this duty by hiring and/or retaining the Metrorail train operator at issue, who WMATA knew or should have known was not a safe, careful, prudent or otherwise fit and competent train operator.

65. WMATA's negligence in hiring and/or retaining the Metrorail train operator at issue directly and proximately caused Plaintiff injuries and damages.

66. Had WMATA exercised reasonable care, Plaintiff would not have suffered these injuries and damages.

67. The hiring and retention of employees is not a discretionary act or governmental function.

68. Plaintiff did not assume the risk of or contribute in any way to her injury.

## COUNT V

(Negligent Infliction of Emotional Distress against Defendant WMATA)

69. Plaintiff realleges and incorporates by reference each of the above Paragraphs 1-68.

70. Defendant WMATA's negligence in: (a) operating the Metrorail train; (b) maintaining and inspecting the subway door system; (c) negligently supervising and training its employees; and/or (d) negligently hiring and retaining the Metrorail train operator resulted in direct physical injuries to Plaintiff.

71. As a direct and proximate result of WMATA's negligence, and the direct physical injuries it caused, Plaintiff suffered, and continues to suffer, severe emotional distress.

72. Had WMATA observed the appropriate standard of care, Plaintiff would not have suffered this severe emotional distress.

73. Plaintiff's severe emotional distress includes, but is not limited to:

A. Fear for her physical well-being and safety while trapped in the Metrorail train's doors as the train prepared to depart; and,

B. Ongoing mental anguish and fear of becoming trapped again by a Metrorail train's doors, rendering her emotionally unable to ride the Metro unaccompanied or in a motorized wheelchair.

74. The severe emotional distress caused by WMATA's negligence has negatively affected Plaintiff's physical well being.

75. Plaintiff did not assume the risk of or contribute in any way to her injury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant her relief as follows:

A. Enter judgment against Defendant WMATA on all counts;

B. Award compensatory damages in an amount to be determined at trial;

C. Award Plaintiff reasonable attorneys' fees and costs of suit; and,

D. Other relief deemed just and proper by the Court.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a trial by jury on any and all issues raised by this Amended Complaint that are triable of right by jury.

Dated: January 16, 2007                    Respectfully submitted,

                                                                                   /s/ Patrick M. Bryan
Chong S. Park (D.C. Bar No. 463050)
Patrick M. Bryan (D.C. Bar No. 490177)
Eunnice H. Eun (D.C. Bar No. 500203)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing First Amended Complaint was served on the following via email (.pdf attachment) and U.S. mail on January 16, 2007:

Gerard J. Stief
Associate General Counsel
Washington Area Metropolitan Transit Authority
600 Fifth Street, N.W.
Washington, DC 20001
Telephone: (202) 962-1463
Facsimile: (202) 962-2550

_____/s/_____
Patrick M. Bryan