**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARILYN PRESTON-KILLINGHAM,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>WASHINGTON METROPOLITAN<br>AREA TRANSIT AUTHORITY, a/k/a<br>WMATA,<br><br>　　　　　Defendant. | Civil Action No. 1:06-CV-00074<br><br>Magistrate Judge Alan Kay<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFF'S MOTION AND MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO COMPEL**

Plaintiff Marilyn Preston-Killingham, by her respective undersigned attorneys, respectfully brings this motion to compel defendant Washington Metropolitan Area Transit Authority ("WMATA" or "defendant") to produce documents responsive to Plaintiff's First Request for Production of Documents and Electronically Stored Information ("Plaintiff's Request") Numbers 2-11, 13-26, 29-34, 36-39, and to answer Plaintiff's First Set of Interrogatories Numbers 1-4 (collectively, "Requests").[1]

**INTRODUCTION**

WMATA has refused (despite a three-week extension and multiple and repeated offers of compromise to narrow the scope of several discovery requests by Plaintiff) to produce documents responsive to Plaintiff's discovery requests. In fact, more than three months after

---

[1]    In accordance with LCvR 7(m), counsel for Plaintiff discussed the issues presented in the instant motion with counsel for WMATA in an effort to narrow the areas of disagreement on April 26 and May 2, 2007, but the parties were unable to reach an agreement.

Plaintiff's discovery requests were served, WMATA produced a sum total of **56 pages** of material (a paltry eleven documents).[2]  Since then, WMATA has only agreed to make certain, select documents — responsive to only a few of Plaintiff's outstanding requests — available for inspection.   WMATA apparently contends that the smattering of documents that it made available for inspection is sufficient to meet its obligations under the Federal Rules.  WMATA's unilateral (and piecemeal) approach to discovery, however, is clearly inconsistent with its responsibilities under the Federal Rules.  Indeed, not only has WMATA refused to produce any documents responsive to a substantial number of Plaintiff's requests, it has also failed to produce those documents it has purportedly agreed to produce.  That is, although Plaintiff inspected and requested the production of certain responsive documents that WMATA made available for inspection at its Landover, Maryland facility, WMATA has, to date, neither produced these documents nor provided any concrete indication as to when such production can be expected.

WMATA's unilateral approach to discovery is exacerbated by its apparent indifference to the discovery schedule governing this case.  Discovery is set to close on July 13, 2007.  Yet, although WMATA was granted a three-week extension to respond to Plaintiff's requests, on April 26, 2007, a month *after* the three-week extension expired, counsel for WMATA revealed that he still had not undertaken *any* effort to search for or collect responsive documents for a substantial number of Plaintiff's requests.  Furthermore, to date, WMATA has provided no reliable indication (despite repeated inquiries by counsel for Plaintiff) as to when it would produce any additional responsive documents.  WMATA apparently intends to stall its way

---

[2]    WMATA faxed an additional three pages of documents to Plaintiff's counsel immediately after the parties' initial meet-and-confer.  Similarly, WMATA faxed nine pages of documents the day after the parties' second meet-and-confer.  These faxes are emblematic of WMATA's piecemeal approach to discovery.

through the discovery process and to unilaterally determine what documents it will produce (in a piecemeal fashion). The Federal Rules, however, do not permit such gamesmanship.

Similarly, WMATA has failed to offer any meaningful response to Plaintiff's interrogatories. Plaintiff propounded only four interrogatories, asking WMATA to describe the basis for its contentions that WMATA is immune from suit (Interrogatory No. 1) and that Plaintiff was contributorily negligent (Interrogatory No. 2), as well as the proper procedure for closing, and any safety devices associated with, Metrorail car doors (Interrogatory Nos. 3, 4). In response to Interrogatory Numbers 1 and 2, WMATA provided one-sentence, non-responsive answers. In response to the remaining interrogatories, WMATA simply referred to an *excerpt* of a document that is either wholly non-responsive or simply inadequate. WMATA has thus made no effort to fulfill its responsibilities under Federal Rule of Civil Procedure 33.

In short, WMATA has utterly defaulted on its discovery obligations and has sought to delay Plaintiff's access to critical and relevant information. Discovery in this case is set to close on July 13, 2007. Accordingly, Plaintiff respectfully requests that the Court compel WMATA to produce all documents responsive to Plaintiff's First Request for the Production of Documents and Electronically Stored Information and to answer Plaintiff's First Set of Interrogatories no later than June 15, 2007.

## BACKGROUND

On Christmas Day, 2003, Plaintiff Marilyn Preston-Killingham was seriously injured while attempting to exit a Red Line train at the Gallery Place Metro station. Ms. Preston-Killingham, traveling in an automatic wheelchair, was trapped, without warning, between the Metrorail car doors with the front portion of her wheelchair on the platform and the remaining portion in the subway car. Her left wrist was pinned between the subway car door and her

wheelchair.  As Ms. Preston-Killingham struggled to free herself and her wheelchair from the

doors, passengers inside the subway car and passengers on the platform pushed and pulled on the

doors and on the wheelchair in an attempt to dislodge her from the doors.  At this time, after Ms.

Preston-Killingham was trapped, the Metrorail sound system began to chime "doors closing,"

indicating that the train operator was preparing to leave the station.  In the struggle to free herself

from the subway car doors, Ms. Preston-Killingham injured her wrist, shoulder, back, and neck.

And, as a result of this incident, she has suffered severe emotional distress.  Since this incident,

Ms. Preston-Killingham has not been able to make use of the Metrorail system in a motorized

wheelchair for fear of being trapped again in the doorway of a Metro train.

Ms. Preston-Killingham filed a complaint against WMATA seeking monetary relief for

her physical injuries as well as compensation for the severe emotional distress caused by the

incident.[3]  Ms. Preston-Killingham's complaint alleges, among other things, that WMATA and

its employees were negligent in the operation, maintenance, and inspection of the Metrorail train.

(*See* First Am. Compl. (D.E. #24) ¶¶ 42-52, 69-75.)

### A.     Plaintiff's Discovery Requests.

On January 29, 2007, counsel for Ms. Preston-Killingham served upon WMATA

Plaintiff's First Request for the Production of Documents (attached hereto as Exhibit A) and

Plaintiff's First Set of Interrogatories (attached hereto as Exhibit B).  These requests seek, among

other information, documents and information relating to:

- the identity of the Metrorail train and operator at issue and the identities of each train and operator operating on the Shady Grove Red Line at Gallery Place Metro station

---

[3]   Plaintiff's original complaint was filed *pro se* and Plaintiff is proceeding *in forma pauperis*.

between 9:00 p.m. and 10:30 p.m. on the night of the incident[4] (Request Nos. 2, 4, 6, 8);

- the maintenance, inspection, and repair of certain Metrorail trains (Request Nos. 3, 7, 23, 24, 25, 26, 30, 31, 33);

- violations of WMATA's policies and procedures by Metrorail train operator(s) of, and maintenance personnel working on, the train(s) involved in the incident (Request Nos. 13, 14, 15, 16);

- WMATA's policies and procedures regarding the investigation and processing of complaints of injury by its passengers and training and instruction regarding the safety of disabled passengers (Request Nos. 11, 17, 38, 39);

- personnel records (other than employee benefit and compensation records), including documents related to complaints or disciplinary action, for the operator(s) of the Metrorail train(s) at issue (Request Nos. 5, 9);

- employees on duty on the date of the incident (Request No. 10);

- complaints of injury or property loss arising from incidents in which the doors of a Metrorail train closed on any person, or arising from the operation or malfunction of Metrorail train doors and "doors closing" warning chimes (Request Nos. 18, 19);

- training and instruction of Metrorail train operators regarding, and the proper procedures for, the safe operation of Metrorail train doors and "doors closing" warning chimes (Request Nos. 20, 21; Interrogatory Nos. 3, 4);

- "Notices to Train Operators" relating to the doors and chimes (Request No. 22);

- the doors and "doors closing" warning chimes of the Metrorail train at issue and any safety mechanisms designed to alert a Metrorail train operator to an obstruction preventing proper closure of the doors (Request Nos. 29, 32; Interrogatory No. 4);

- the Plaintiff and her claim file (Request Nos. 34, 36); and,

- the bases for WMATA's affirmative defenses and documents it intends to use in support of its affirmative defenses (Request No. 37; Interrogatory Nos. 1, 2).

---

[4]  Because WMATA is unable to identify the precise Metrorail train that injured Plaintiff, Plaintiff was forced to seek discovery regarding the "Metrorail train and Metrorail car at issue in this litigation" as well as "each Metrorail train operating on the Shady Grove Red Line at the Gallery Place Metro Station on December 25, 2003 between the hours of [9:00] p.m. and [10:30 p.m.]" (Ex. A at 5-6.)

Each of Plaintiff's discovery requests seeks information directly relevant to Plaintiff's claims in this case, *i.e.*, that WMATA and its employees acted negligently with respect to the maintenance, inspection, and/or operation of the Metrorail train resulting in injury to the Plaintiff.

### B.    WMATA's Objections and Responses.

WMATA has refused to produce virtually any documents responsive to Plaintiff's requests. In its original production, WMATA produced only *56 pages* (a total of eleven separate documents), more than half of which are contained in a copy of WMATA's Drug and Alcohol Policy. (*See* Apr. 13, 2007 Letter from S. Abouchedid to G. Stief, attached hereto as Exhibit C.) Indeed, for the majority of Plaintiff's Requests, WMATA failed to produce any responsive documents at all. (*See generally* WMATA's Response to Plaintiff's Request for Production ("WMATA's Response"), attached hereto as Exhibit D.) WMATA, instead, asserted blanket objections on the grounds of relevance and burden to virtually every request. (*Id.*)

As discussed below, neither objection has merit, especially considering that Plaintiff has agreed, on *three* occasions, to narrow the scope of several requests. In particular, because neither WMATA nor Plaintiff can identify the exact train involved in the incident (and because there is disputed testimony regarding the exact time that the incident occurred), Plaintiff originally sought documents regarding Metrorail trains operating on the Shady Grove Red Line at the Gallery Place Metro station on December 25, 2003 between the hours of 6:00 p.m. and midnight. Plaintiff has since agreed, however, to narrow the scope of numerous requests — Request Numbers 6, 7, 8, 9, 10, 14, 16, 26, and 31 — to the time period from 9:00 p.m. until 10:30 p.m. on December 25, 2003, the best approximation of when the incident occurred based on currently available evidence. Thus, Plaintiff's requests have been narrowed to focus on a total of approximately six to eight possible trains and train operators most likely involved in the incident.

WMATA has refused Plaintiff's offers of compromise and, instead, offered to produce only *some* responsive documents (*i.e.*, only certain documents responsive to certain document requests) for one, and later five, trains operating on the Red Line at Gallery Place on December 25, 2003. Specifically, WMATA has determined that it will limit discovery to one train operating at 10:00 p.m. and two trains before and two trains after that time, even though there is disputed testimony regarding the time at which Plaintiff was injured. Additionally, WMATA has refused to produce all responsive documents with respect to the five trains it has (unilaterally) designated as "relevant." WMATA has, instead, only agreed to make available for inspection **certain** maintenance records for these trains.[5] In response to Plaintiff's remaining (*i.e.*, non-maintenance record) requests, WMATA has either flatly refused to produce responsive documents (*e.g.*, Request Nos. 13, 14, 15, 16), or claims that it is still "looking into" what responsive documents exist and whether it intends to produce these documents (*e.g.*, Request Nos. 5, 9, 10, 11, 17, 18, 19, 20, 22, 29, 32, 38, 39).

On top of its failure to produce responsive documents, WMATA has shirked its obligation under Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure; that is, although representing that it possesses "privileged" responsive documents (*see* WMATA's Response to Request Nos. 5, 9, 17, 34, 36), WMATA has failed to produce a privilege log for such documents.

---

[5]  WMATA's discovery gamesmanship also extends to the method in which it made the limited number of responsive maintenance records available for inspection. Specifically, on May 14, 2007, WMATA made available 12 boxes of documents for inspection at its Landover, Maryland facility. The majority of each of these boxes, however, contained documents that were neither relevant to this litigation, nor responsive to Plaintiff's discovery requests.

### C.    WMATA's Interrogatory Responses.

WMATA has also failed to provide meaningful or responsive answers to Plaintiff's interrogatories. As noted earlier, Plaintiff propounded only four interrogatories. In two interrogatories, Plaintiff sought a description of the basis for WMATA's contentions that it is immune from suit (Interrogatory No. 1) and that Plaintiff was contributorily negligent (Interrogatory No. 2). In response to each of these interrogatories, WMATA provided a one-sentence, non-responsive answer. For example, in response to Interrogatory Number 1, WMATA simply stated that "[it] has immunity for governmental functions, including, but not limited to, design activities." (*See* WMATA's Answers to Plaintiff's First set of Interrogatories ("WMATA's Answers"), No. 1, attached hereto as Exhibit E.) Not only is this response wholly lacking in detail, it also ignores the fact that Plaintiff has not alleged a design defect. Furthermore, in response to interrogatories concerning the proper procedures a Metrorail train operator must follow in closing Metrorail car doors and any safety devices or mechanisms designed to alert operators of an obstruction preventing the closure of a Metrorail car door (Interrogatory Numbers 3, 4), WMATA simply refers to an *excerpt* from the "Quick Reference Guide" to the "Initial Train Operator Training Handbook." (*See* WMATA's Answers, Nos. 3, 4.) However, that excerpt is not fully responsive to either interrogatory because it fails to adequately describe any safety guidelines or devices associated with the Metrorail doors. Nor does the excerpt describe the proper procedures for clearing obstructions from Metrorail car doors, as called for in Interrogatory Number 4.[6]

---

[6]    Perhaps realizing that its interrogatory responses were inadequate, WMATA agreed, during the April 26, 2007 conference, to reconsider each of its answers and to communicate to Plaintiff any supplemental answers the following week. (*See* Apr. 27, 2007 Letter from S. Abouchedid to G. Stief, attached hereto as Exhibit G.) Unsurprisingly, WMATA never followed-through on this promise.

WMATA's failure to produce responsive documents and to answer interrogatories is especially troubling in light of the fact that WMATA requested and was granted a ***three-week*** extension to respond to Plaintiff's requests. (*See* Mar. 5, 2007 E-mail from G. Stief to P. Bryan, attached hereto as Exhibit F.) Moreover, during an April 26, 2007 telephone conference — ***three months*** after Plaintiff's discovery requests were served — counsel for WMATA revealed that he had not yet undertaken ***any*** effort to locate responsive documents for a substantial number of Plaintiff's requests. (*See* Ex. G.)

As demonstrated below, WMATA's failure to cooperate in the discovery process — despite a three-week extension and repeated offers of compromise and agreements to narrow the discovery sought by Plaintiff — is both contrary to its obligations under the Federal Rules of Civil Procedure and highly prejudicial to Plaintiff. Plaintiff therefore respectfully requests that the Court grant this Motion to Compel for the reasons specified herein.

## ARGUMENT

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding ***any matter***, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added). The definition of "relevant information" in Rule 26(b)(1) is broad. *Id.* ("Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." (emphasis added)). Courts should therefore construe discovery rules liberally to serve the purposes of discovery, including providing the parties with information essential to the proper litigation of ***all*** relevant facts. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Here, WMATA refuses to produce — or seeks to indefinitely delay the production of — documents relevant to the claims and defenses at issue in this litigation, including, among others,

documents relating to the training of Metrorail operators, WMATA's policies and procedures, violations of WMATA's policies and procedures by certain Metrorail operators and maintenance personnel, documents relating to the operation of and complaints regarding the Metrorail doors and "doors closing" warning chimes, and complaints of injury arising from the operation or malfunction of Metrorail car doors or "doors closing" warning chimes. Instead, WMATA has engaged in classic stall tactics; it has produced a paltry number of (largely non-responsive) documents, and it has only agreed to make *certain* documents (which are responsive to only certain requests) available for inspection — documents concerning the maintenance and inspection of particular Metrorail trains that WMATA has unilaterally determined are relevant. Notably, although Plaintiff inspected and requested the production of certain documents that WMATA made available for inspection at its Landover, Maryland facility, WMATA has, to date, neither produced these documents nor provided any clear indication as to when such production can be expected.

In short, WMATA has either refused to produce responsive documents relating to the majority of Plaintiff's remaining requests, or has stalled for time and failed to offer any meaningful compromise or timeline for production. Counsel for WMATA has repeatedly attempted to put off any meaningful dialogue regarding Plaintiff's individual discovery requests by continually promising only to "look into" Plaintiff's requests.[7] The Federal Rules, however,

---

[7] Counsel for Plaintiff has repeatedly met and conferred with counsel for WMATA telephonically in an attempt to obtain commitments from WMATA for the production of responsive documents or to reach a compromise regarding discrete requests for production. Despite these attempts at cooperation, however, counsel for WMATA has continued to delay and to provide piecemeal responses. For example, during the April 26, 2007 conference referenced above, counsel for WMATA requested additional time to consider his objections, search for responsive documents, and decide which documents he intended to produce. (*See* Ex. G.) On May 2, 2007, counsel for WMATA requested even more time to "look into" Plaintiff's concerns but promised to respond to her requests or to offer compromises no later than the following week (*i.e.*, by May 11, 2007). WMATA's counsel then reiterated his intention to "wrap up" the production by the end of the week in a May 7, 2007

(Continued…)

do not permit a litigant to engage in such one-sided (and tactically calculated) conduct.

Therefore, Plaintiff respectfully requests that the Court order WMATA to produce information

and answers responsive to Plaintiff's Requests.

I.    **WMATA HAS REFUSED PRODUCTION OF DOCUMENTS THAT ARE
      RELEVANT TO THE CLAIMS AND DEFENSES ASSERTED IN THIS
      LITIGATION.**

Within this Circuit, it is well-settled that ***any possibility*** that information requested in

discovery may be relevant to the subject-matter of the action will satisfy Rule 26(b)(1)'s

requirements. *Food Lion, Inc. v. United Food & Commercial Workers Int'l Union*, 103 F.3d

1007, 1012 (D.C. Cir. 1997); *Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F. Supp. 2d 85, 86

(D.D.C. 2005).

Despite the broad scope of discovery, WMATA has objected on the grounds of relevance

(and burden) to producing — and refused virtually any discovery regarding — such fundamental

information as the identities of each train and each train operator that may have been involved in

the incident causing Plaintiff's injuries[8] (*see* WMATA's Response to Request Nos. 6, 8); the

maintenance, inspection, and repair of certain Metrorail trains (*see id.*, Request Nos. 3, 7, 23, 24,

25, 26, 30, 31, 33); the employees on duty on the date of the incident (*see id.*, Request No. 10);

records regarding complaints of injury or property loss arising from incidents in which the doors

of a Metrorail train closed on any person or arising from the operation or malfunction of

Metrorail train doors and "doors closing" warning chimes  (*see id.*, Request Nos. 18, 19); and,

---

telephone call.  To date, however, WMATA has failed to make good on these assurances and has still not adequately responded to the overwhelming majority of Plaintiff's requests.  As a result, and in light of impending discovery deadlines, Plaintiff was forced to seek intervention of the Court.

[8]    As noted earlier, because WMATA is unable to identify the precise Metrorail train that injured Plaintiff, she was forced to seek discovery regarding "each Metrorail train operating on the Shady Grove Red Line at the Gallery Place Metro Station on December 25, 2003 between the hours of [9:00] p.m. and [10:30 p.m.]"

the training and instruction of Metrorail train operators regarding, and the proper procedures for, the safe operation of Metrorail train doors and "doors closing" warning chimes (*see id.*, Request Nos. 20, 21). WMATA has also refused to produce documents and internal communications regarding the Metrorail car doors and "doors closing" chimes, as well as communications to Metrorail operators.[9] (*See id.*, Request Nos. 22, 29.) In a personal injury and negligence action such as this, it is inconceivable (and WMATA offers no explanation for) how such information is "irrelevant." *Cf. Athridge v. Aetna Cas. and Sur. Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998) (noting in negligence action that "blanket objections" as to relevance and burden "do not comply with Fed. R. Civ. P. 34(b) and courts disfavor them.").

WMATA levies the same blanket relevance and burden objections to information relevant to the standard of care and possible breaches of that standard by its employees that were (or were likely to be) directly involved in the incident causing Plaintiff's injuries. Specifically, WMATA has objected to the relevance and burden of producing information regarding violations of WMATA's policies and procedures by Metrorail train operator(s) of, and maintenance personnel working on, the train(s) involved in the incident (*see* WMATA's Response to Request Nos. 13, 14, 15, 16); documents related to complaints or disciplinary actions taken against the operator(s) of the Metrorail train at issue (*see id.*, Request Nos. 5, 9); records regarding complaints of injury or property loss arising from incidents in which the doors

---

[9] WMATA responds to these requests by referring to an excerpt from the "Quick Reference Guide" to the "Initial Train Operator Handbook." This single (partial) document, however, is neither responsive to Request No. 22, nor anywhere near fully responsive to Request No. 29. Rather, WMATA unilaterally determined that an excerpt from one training manual is "good enough." Such a unilateral determination of relevance and scope of discovery by a litigant, however, is contrary to both the policy underlying Fed. R. Civ. P. 26 and its express language. *See* Fed. R. Civ. P. 26(b)(1) (permitting discovery "regarding any matter, not privileged . . . reasonably calculated to lead to the discovery of admissible evidence."); *see also Oppenheimer Fund, Inc.*, 437 U.S. at 350-51.

of a Metrorail train closed on any person or arising from the operation or malfunction of

Metrorail train doors and "doors closing" warning chimes (*see id.*, Request Nos. 18, 19);

information regarding the training and instruction of Metrorail train operators, and the proper

procedures for the safe operation of Metrorail train doors and "doors closing" warning chimes

(*see id.*, Request Nos. 20, 21); and training and instruction regarding the safety of disabled

passengers (*see id.*, Request Nos. 38, 39).

WMATA has provided no reasoned basis to deny Plaintiff discovery into matters directly

relevant to the claims and defenses at issue in this litigation.    Indeed, its suggestion that

fundamental information such as the identities of persons likely responsible for the injury-

causing incident, as well as information regarding the standard of care (and breaches thereof), is

"not relevant" is simply incredible and wholly untenable in the face of a negligence action such

as this.    *See*, *e.g.*, *Wainwright v. WMATA*, 163 F.R.D. 391, 395 (D.D.C. 1995) (in negligence

action, granting motion to compel production of, among others, documents regarding (i) other

accidents involving injuries similar to those alleged by plaintiff, (ii) training of WMATA

employees, and (iii) other "defects" or malfunctions similar to those alleged by plaintiff).

Moreover, WMATA has failed to substantiate its blanket claim of undue burden; as such,

WMATA's objection cannot stand.[10]    *See*, *e.g.*, *Athridge*, 184 F.R.D. at 191 ("[W]ith regard to

[defendant's] burdensomeness objections, defendant merely states, in conclusory fashion, that

the requests are unduly burdensome.    That too is insufficient."); *Wainwright*, 163 F.R.D. at 395

---

[10]    For example, during the April 26, 2007 telephonic conference discussed above, counsel for WMATA was
unable even to venture a guess as to the volume of Metrorail train maintenance records Plaintiff could expect to
receive in response to her requests for such records.    (*See* Ex. G.)  Later, in response to Plaintiff's requests for
maintenance records of certain trains, WMATA made available for inspection only 12 boxes of documents.
Only a fraction of these documents have been marked to be produced to Plaintiff — hardly amounting to a
"burdensome" volume of material.

(granting motion to compel, in part, because "WMATA has not supported its assertion of undue burden in fulfilling Wainwright's requests.  WMATA has not indicated the number of incidents involved, nor the number of documents, nor the number of work hours.")

Simply put, WMATA has provided no basis to resist Plaintiff's discovery into matters relevant to this litigation.  Accordingly, Plaintiff respectfully requests that the Court grant its motion to compel the production of all documents responsive to Request Numbers 2-11, 13-26, 29-34, 36-39, and answers to Interrogatory Numbers 1-4.

## II.    WMATA HAS FAILED TO COMPLY WITH RULE 26(b)(5).

WMATA has, to date, ignored its obligation under Federal Rule of Civil Procedure 26 to produce a privilege log for responsive documents it claims are privileged.  Rule 26(b)(5)(A) provides that "[w]hen a party withholds information otherwise discoverable under these rules by claiming that it is privileged . . . the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that . . . will enable other parties to assess the applicability of the privilege or protection."  Fed. R. Civ. P. 26(b)(5)(A).

Here, WMATA has asserted blanket objections to Plaintiff's Request Numbers 5, 9, 13-17, 24, and 36 on the grounds of "privilege" and unspecified confidentiality concerns.  However, WMATA has neither identified the documents withheld on the basis of these blanket objections, nor has it "describe[d] the nature of the documents, communications, or things not produced or disclosed in a manner" that would enable Plaintiff to asses the applicability of the asserted privileges.    WMATA has also failed to substantiate or otherwise explain the basis for withholding documents on the basis of its (unspecified) "confidentiality" concerns relating to

14

internal business records.[11]    Therefore, Plaintiff respectfully requests that the Court compel

WMATA to produce documents responsive to Plaintiff's Request Numbers 5, 9, 13, 14, 15, 16,

and 17 or, alternatively, to produce a log of all responsive documents withheld from disclosure

on the basis of any "privilege," and the grounds for the assertion of such privilege.  *See*, *e.g.*,

*Wainwright*, 163 F.R.D. at 395 (granting motion to compel production of a log "of documents

withheld on privilege grounds, and the basis for the assertion of privilege.").

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court order WMATA to

produce documents responsive to Plaintiff's Document Request Numbers 2-11, 13-26, 29-34, 36-

39, and to compel answers to Interrogatory Numbers 1-4 no later than June 15, 2007.

Dated: May 16, 2007                                Respectfully submitted,

                                                   */s/ Patrick M. Bryan*

                                                   _____

                                                   Patrick M. Bryan (D.C. Bar No. 490177)
                                                   Eunnice Eun (D.C. Bar No. 500203)
                                                   KIRKLAND & ELLIS LLP
                                                   655 Fifteenth Street, N.W., Suite 1200
                                                   Washington, D.C. 20005
                                                   Tel.: (202) 879-5000
                                                   Fax: (202) 879-5200

---

[11]    WMATA's unsubstantiated confidentiality objections are particularly difficult for Plaintiff to accept given that WMATA has requested *30 years* worth of highly confidential and private medical information, the vast majority of which has absolutely nothing to do with the claims and defenses at issue in this litigation.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARILYN PRESTON-KILLINGHAM, <br><br> Plaintiff, <br><br> v. <br><br> WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, a/k/a WMATA, <br><br> Defendant. | Civil Action No. 1:06-CV-00074-AK <br><br> Magistrate Judge Alan Kay |

**[PROPOSED] ORDER TO COMPEL
PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES**

THIS MATTER is before the Court on Plaintiff's Motion to Compel defendant Washington Metropolitan Area Transit Authority ("WMATA") to produce documents responsive to Plaintiff's First Request for Production of Documents and Electronically Stored Information Numbers 2-11, 13-26, 29-34, 36-39, and to answer Plaintiff's First Set of Interrogatories Numbers 1-4.  The Court, having considered the parties' submissions, hereby GRANTS Plaintiff's motion.  Accordingly, the Court orders defendant WMATA to produce documents and information responsive to each of the above Requests and to answer each of the above Interrogatories no later than June 15, 2007.

IT IS SO ORDERED.


Dated: _____          _____
                                     The Hon. Alan Kay
                                     U.S.D.C Magistrate Judge

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing PLAINTIFF'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL was served on May 16, 2007 via Federal Express on the following counsel of record:

> Gerard J. Stief
> Associate General Counsel
> Washington Area Metropolitan Transit Authority
> 600 Fifth Street, N.W.
> Washington, D.C.  20001

*/s/ Eunnice H. Eun*
_____

Eunnice H. Eun