# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARILYN PRESTON-KILLINGHAM,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, a/k/a WMATA,<br><br>Defendant. | Civil Action No. 1:06-CV-00074 (AK)<br><br>Magistrate Judge Alan Kay |

**PLAINTIFF'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS
AND ELECTRONICALLY STORED INFORMATION TO DEFENDANT
WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff Marilyn Preston-Killingham ("Plaintiff"), through the undersigned counsel, hereby submits the following request for production of documents and electronically stored information to Defendant Washington Metropolitan Area Transit Authority ("WMATA" or "Defendant").

Plaintiff requests that WMATA produce the following documents and things for inspection at the offices of Kirkland & Ellis LLP, 655 Fifteenth Street, N.W., Suite 1200, Washington, D.C. 20005, or at such place as may be agreed upon by counsel. In accordance with FED R. CIV. P. 34, WMATA shall submit responses to the following document requests within thirty (30) days. Each document request is subject to the Definitions and Instructions set forth below.

## **DEFINITIONS AND INSTRUCTIONS**

1. If you object to any part of a request, set forth the basis for your objection and respond to all parts of the request to which you do not object.

2. "You" and "your" mean Defendant WMATA, its employees, officers, directors, agents, and representatives, both individually and collectively.

3. "Document" is used in the broadest possible sense and means, without limitation, any writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained, or translated, if necessary, by WMATA into reasonably usable form. "Document" thus means anything which may be considered to be a document or tangible thing within the meaning of Rule 34 of the Federal Rules of Civil Procedure, and includes, without limitation, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, accounts, analytical records, reports and/or summaries of investigations, press releases, comparisons, books, calendars, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes of minutes of meetings or communications, and electronically stored information such as electronic mail/messages and/or "e-mail," instant messaging, tapes, disks, information stored or maintained by electronic data processing or word processing equipment, and all other data compilations from which information can be obtained (by translation, if necessary, by you through detection devices into usable form), including, without limitation, electromagnetically sensitive storage media such as CDs, DVDs, memory sticks, floppy disks, hard disks, magnetic tapes, and any preliminary versions, as well as drafts or revisions of any of the foregoing, whether produced or authored by WMATA or anyone else.

4. "Relating to" is used in the broadest possible sense and means, in whole or in part, addressing, analyzing, concerning, constituting, containing, commenting, in connection with, dealing, discussing, describing, embodying, evidencing, identifying, pertaining, referring, reflecting, reporting, stating, or summarizing.

5. "Communication" is used in the broadest possible sense and means every conceivable manner or means of disclosure, transfer, or exchange of oral, written, or electronically stored information between one or more persons or entities.

6. "Litigation" refers to the above-captioned case.

7. "Incident that is the subject of this Litigation" means the incident on or about December 25, 2003 in which Plaintiff alleges that the doors of a Red Line Metrorail train closed on her as she attempted to exit the train at the Gallery Place Metro station.

8. "Metrorail train at issue in this Litigation" means the Red Line Metrorail train whose doors closed on Plaintiff as she attempted to exit the train at the Gallery Place Metro station on or about December 25, 2003.

9. "Gallery Place Metro station" means the Gallery Place-Chinatown Metrorail station located at 630 H Street, N.W., Washington, D.C.

10. You are to produce entire documents including all attachments, cover letters, memoranda, and appendices, as well as the file, folder tabs, and labels appended to or containing any documents. Copies which differ in any respect from an original (because, by way of example only, handwritten or printed notations have been added) shall be produced separately.

11. Each document requested herein must be produced in its entirety and without deletion, abbreviation, redaction, expurgation, or excisions, regardless of whether you consider the entire document to be relevant or responsive to these requests. If you have redacted any

portion of a document, stamp the word "redacted" on each page of the document which you have redacted. Privileged redactions must be included in a privilege log; any non-privileged redactions must also be included in a log describing the basis for the redaction and all information necessary for Plaintiff and the Court to assess your reasons for the redaction.

12. If any privilege is claimed as a ground for not producing or redacting a document or tangible thing, provide a privilege log describing the basis for the claim of privilege and all information necessary for Plaintiff and the Court to assess the claim of privilege, in accordance with Federal Rule of Civil Procedure 26(b)(5)(A). The log shall include a separate entry for each document and attachment withheld or redacted, including the following information: (i) specific grounds for the claim of privilege; (ii) the title of the document or attachment; (iii) the date of the document or attachment; (iv) the author of the document or attachment; (v) the addressees and recipients of the document or attachment or any copy thereof (including persons "cc'd," "bcc'd" or "blind cc'd"); (vi) a description of the subject matter of the document or attachment in sufficient detail to assess the claim of privilege; (vii) the bates range or page length of the document or attachment; and (viii) the Requests to which the document or attachment are responsive.

13. Whenever necessary to bring within the scope of a request a response that might otherwise be construed to be outside its scope, the following constructions should be applied:

    (i)    Construing the terms "and" and "or" in the disjunctive or conjunctive, as necessary, to make the request more inclusive;

    (ii)    Construing the singular form of any word to include the plural and the plural form to include the singular;

    (iii)    Construing the past tense of the verb to include the present tense and the present tense to include the past tense;

    (iv)    Construing the masculine form to include the feminine form;

(v) Construing the term "Date" to mean the exact day, month, and year, if ascertainable; if not, the closest approximation that can be made by means of relationship to other events, locations, or matters; and,

(vi) Construing negative terms to include the positive and vice versa.

14. Documents requested are those in the actual or constructive possession, custody, care, or control of WMATA, or anyone acting on behalf of WMATA.

15. These document requests are continuing in nature, up to and during the course of trial. Documents and tangible things sought by these Requests that you obtain after you serve your answers must be produced to counsel for Plaintiff by supplementary answers or productions pursuant to Federal Rule of Civil Procedure 26(e).

16. The relevant time period for these requests is from January 1, 2002 to the present, unless otherwise stated.

17. Unless another format is mutually agreed upon by the parties (prior to your production), all electronically stored information shall be produced in single-page tiff format with image load file in Concordance / Opticon indicating document breaks. Any related data (such as "begbates," "endbates," or OCR) should be in ".dat" or ".txt" file that utilizes either Concordance default delimiters (if known) or unique delimiters such as pipe ("|"), or caret ("^").

## REQUESTS FOR DOCUMENTS AND INFORMATION

1. All surveillance recordings from the Gallery Place Metro station for the date of December 25, 2003, including but not limited to video recordings, audio recordings, and photographs.

2. Documents sufficient to identify the Metrorail train and Metrorail car at issue in this Litigation.

3. All maintenance, inspection, and repair records for the Metrorail train and Metrorail car at issue in this Litigation.

4. Documents sufficient to identify the operator or operators of the Metrorail train at issue in this Litigation.

5. All personnel records (excluding records relating to health insurance, compensation, retirement benefits, or similar benefits provided by WMATA to all employees), for the operator or operators of the Metrorail train at issue in this Litigation, including all documents relating to complaints or instances of disciplinary action.

6. Documents sufficient to identify each Metrorail train and Metrorail car operating on the Shady Grove Red Line at the Gallery Place Metro station on December 25, 2003 between the hours of 6:00 p.m. to midnight.

7. All maintenance, inspection, and repair records for each Metrorail train and Metrorail car operating on the Shady Grove Red Line at the Gallery Place Metro station on December 25, 2003 between the hours of 6:00 p.m. to midnight.

8. Documents sufficient to identify the operators of each Metrorail train operating on the Shady Grove Red Line at the Gallery Place Metro station on December 25, 2003 between the hours of 6:00 p.m. to midnight, as well as any employees on duty at the Gallery Place Metro station on December 25, 2003 between the hours of 6:00 p.m. to midnight.

9. All personnel records (excluding personnel records relating to health insurance, compensation, retirement benefits, or similar benefits provided by WMATA to all employees), for each operator of a Metrorail train operating on the Shady Grove Red Line at the Gallery

Place Metro station on December 25, 2003 between the hours of 6:00 p.m. to midnight, including all documents relating to complaints or instances of disciplinary action.

10. Documents sufficient to identify all WMATA employees who were on duty or otherwise present at the Gallery Place Metro station on December 25, 2003 between the hours of 6:00 p.m. and midnight.

11. Documents sufficient to show the procedures for handling Metrorail rider complaints, including the procedures for processing, filing, and maintaining records of "comment cards" submitted to WMATA employees by Metrorail passengers.

12. Documents sufficient to show WMATA's substance abuse policy, in particular, any substance abuse policy applicable to or covering Metrorail train operators.

13. All documents relating to any violation of WMATA's substance abuse policy by the operator or operators of the Metrorail train at issue in this Litigation.

14. All documents relating to any violation of WMATA's substance abuse policy by any Metrorail train operator who operated a train operating on the Shady Grove Red Line at the Gallery Place Metro station on December 25, 2003 between the hours of 6:00 p.m. to midnight. For purposes of clarity, the relevant time period for this request is from January 1, 2002 to the present.

15. All documents relating to any violation of WMATA's substance abuse policy by any WMATA employee with responsibilities relating to the maintenance, inspection, or repair of the Metrorail train at issue in this Litigation.

16.     All documents relating to any violation of WMATA's substance abuse policy by any WMATA employee with responsibilities relating to the maintenance, inspection, or repair of any train operating on the Shady Grove Red Line at the Gallery Place Metro station on December 25, 2003 between the hours of 6:00 p.m. to midnight. For purposes of clarity, the relevant time period for this request is from January 1, 2002 to the present.

17.     Documents sufficient to show the proper procedures to investigate, review, evaluate, process, or examine complaints or claims of physical injury to or property loss by Metrorail passengers.

18.     Documents sufficient to show the number of complaints relating to physical injuries or the loss of property arising from any incident in which the doors of any Metrorail train closed on any person.

19.     All documents relating to personal injuries sustained by Metrorail riders arising from the operation or malfunction of Metrorail car doors and "doors closing" warning chimes.

20.     All documents relating to any training or instruction that Metrorail train operators receive regarding the safe operation of Metrorail train doors and "doors closing" warning chimes.

21.     A copy of each safety regulation, standard operating procedure, or operations manual issued to Metrorail train operators, including a copy of each Handbook of Rules and Regulations, Manual of Rules, and any supplements or revisions made to the foregoing.

22.     A copy of each Notice to Operators relating to Metrorail train car doors and the "doors closing" warning chimes.

23. Documents sufficient to identify all maintenance inspectors and maintenance analysts with responsibilities relating to the Shady Grove Red Line Metrorail trains.

24. Documents sufficient to show WMATA's preventative maintenance schedule relating to Metrorail train car doors and "doors closing" warning chimes.

25. Documents sufficient to identify all inspections and compliance with WMATA's preventative maintenance schedule relating to Metrorail train car doors and "doors closing" warning chimes for the Metrorail train at issue in this Litigation.

26. Documents sufficient to identify all inspections and compliance with WMATA's preventative maintenance schedule relating to Metrorail train car doors and "doors closing" warning chimes for each train operating on the Shady Grove Red Line at the Gallery Place Metro station on December 25, 2003 between the hours of 6:00 p.m. to midnight.

27. All comment cards and all other recorded comments and complaints submitted at the Gallery Place Metro station on or about December 25, 2003.

28. All expert reports, other materials or documents which were reviewed or relied upon, in whole or in part, by any expert you expect to call or may call to testify in this Litigation at any time, including but not limited to summary judgment proceedings, and trial.

29. All documents, including, but not limited to, memoranda, correspondence, e-mails, and other communications, relating to the doors and "doors closing" warning chime of the Metrorail train at issue in the Litigation.

30. Documents sufficient to identify all persons responsible for the maintenance, inspection, or repair of the Metrorail train at issue in this Litigation.

31. Documents sufficient to identify all persons responsible for the maintenance, inspection, or repair of any Metrorail train operating on the Shady Grove Red Line at the Gallery Place Metro station on December 25, 2003 between the hours of 6:00 p.m. to midnight.

32. All documents relating to the doors of the Metrorail train at issue in this Litigation, including, but not limited to: (a) documents relating to the operation of the doors; (b) documents relating to the procedure for opening and closing the doors; and (c) documents relating to any safety measure, device, mechanism, or procedure associated with the doors.

33. A copy of organizational charts or documents sufficient to identify all individuals with responsibility for training Metrorail operators on the Shady Grove Red Line, and all individuals with responsibility for maintenance, inspections, and repairs for the Shady Grove Red Line.

34. All documents relating to Marilyn Preston-Killingham.

35. Documents sufficient to show the forwarding address and contact information for former WMATA employee Robin McClelland.

36. All documents relating to any claim file relating to the incident that is the subject of this Litigation, including but not limited to all documents relating to CLAIM # 916679 AVR or Event Report 2003-41517, and any call logs, notes, or correspondence relating thereto.

37. All documents you intend to use in support of your affirmative defenses in this Litigation.

38. Documents sufficient to show WMATA's policies and procedures relating to the safety of passengers with disabilities.

39. All documents relating to any training or instruction that Metrorail train operators receive regarding the safety of passengers with disabilities.

Dated: January 29, 2007

Respectfully submitted,

/s/ Patrick M. Bryan

Patrick M. Bryan (D.C. Bar No. 490177)
Eunnice H. Eun (D.C. Bar No. 500203)
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5212
Facsimile: (202) 879-5200

**Attorneys for Plaintiff Marilyn Preston-Killingham**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiff's First Request for the Production of Documents and Electronically Stored Information to Defendant Washington Metropolitan Area Transit Authority was served on the following via U.S. mail on this the 29th day of January 2007:

    Gerard J. Stief
    Associate General Counsel
    Washington Area Metropolitan Transit Authority
    600 Fifth Street, N.W.
    Washington, DC 20001
    Telephone: (202) 962-1463
    Facsimile: (202) 962-2550

                                                  _____
                                                  Patrick M. Bryan