# Exhibit C

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Sean C. Abouchedid
To Call Writer Directly:
(202) 879-5051
sabouchedid@kirkland.com

655 Fifteenth Street, N.W.
Washington, D.C. 20005

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

April 13, 2007

Gerard J. Stief
Associate General Counsel
Washington Metropolitan Area Transit Authority
600 Fifth Street, NW
Washington, DC 20001

Re:   *Preston-Killingham v. Washington Metropolitan Area Transit Authority*

Dear Gerry:

I write concerning Plaintiff Marilyn Preston-Killingham's requests for discovery from your client.

We request an immediate meet and confer regarding your responses to our First Set of Interrogatories and First Request for the Production of Documents and Electronically Stored Information to Defendant Washington Metropolitan Area Transit Authority ("WMATA"). We have several general and specific concerns regarding WMATA's responses and objections, which are outlined below.

To date, WMATA has produced a scant 56 pages of documents (more than half of which are contained in WMATA's Drug and Alcohol Policy) in response to Plaintiff's First Requests, served January 29, 2007. Indeed, for the majority of Plaintiff's Requests, WMATA has failed to produce any responsive documents at all. This deficiency is inexcusable given that we have already granted WMATA a ***three-week extension*** to respond to our requests—nearly twice as much time as the Federal Rules of Civil Procedure permit. Please produce documents responsive to Plaintiff's First Requests no later than April 27, 2007.

WMATA has failed to produce any documents sufficient to identify the Metrorail train and Metrorail train operator at issue in this case. (*See* WMATA's Resp. to Pl.'s First Req. for Prod. of Docs. Nos. 2, 4.)

The Train Interval Sheet and the MTPD Event Report that WMATA references in response to Plaintiff's requests are each inadequate, and are not responsive. Neither document identifies the specific train or the specific train operator involved in the incident that is the

Gerard J. Stief
April 13, 2007
Page 2

**KIRKLAND & ELLIS LLP**

subject of this litigation. The Train Interval Sheet appears to list the trains and train operators arriving and departing on December 25, 2003 between 4:05 p.m. and 6:35 p.m. from an unidentified rail station in an unspecified direction (you identified the station by phone as Glenmont Station but that is unclear on the face of the document). And even if the document does refer to Glenmont Station, it does not indicate how long it took for the departing trains to reach other stations. The Event Report merely suggests that Ms. Preston-Killingham was injured by the doors of a Shady Grove Red Line train at approximately 10:00 p.m. It does not identify the train in which she was injured or the operator of that train.

Moreover, the Vehicle Incident Report and the ROCS Spots Report—which WMATA produced but did not reference in any of its responses—are also insufficient to identify the train and train operator at issue. Like the Event Report, the Vehicle Incident Report indicates only that the incident occurred at approximately 10:00 p.m. The columns labeled "TRN NO" and "CAR NO" on the document are blank. The ROCS Spots Report appears to list departures and arrivals for trains at an unidentified station, traveling in an unspecified direction, between 9:00 p.m. and 11:00 p.m., as well as the times at which the doors of those trains opened and closed. It, too, does not identify the train or train operator at issue.

WMATA's failure to respond adequately to these requests is particularly troubling given that, as we have discussed previously by phone, Ms. Preston-Killingham was informed by Ms. Robin McClelland, a WMATA employee, that she had identified the train and train operator involved in the incident, as well as the kiosk attendant on duty.

WMATA has also failed to produce documents sufficient to identify each Metrorail train and train operator operating on the Shady Grove Red Line at Gallery Place Metro station between 7:30 p.m. and 10:30 p.m. on December 25, 2003. (*See* WMATA's Resps. to Reqs. Nos. 6, 8.)

The Train Interval Sheet WMATA points to in response to these requests only lists train arrivals and departures between 4:05 p.m. and 6:35 p.m., as noted above, and is therefore plainly inadequate. WMATA refuses to produce any other information responsive to these requests "on the grounds of overbreadth and burdensomeness to the extent [the requests seek] information unrelated to the time of the alleged incident." (WMATA's Resps. to Reqs. Nos. 6, 8.) This objection is without merit. First, the Plaintiff has already cooperated with WMATA by narrowing the requested time frame for Requests 6-10, 14, 16, 26, and 31 to the period from 7:30 p.m. to 10:30 p.m. on December 25, 2003. Second, the precise time of the incident remains unclear. Finally, as demonstrated above, WMATA has failed to sufficiently identify the Metrorail train and train operator at issue. As a result, until WMATA is able to identify the train and operator, discovery into the requested three-hour time frame is both reasonable and necessary, and a further narrowing of that time frame is inappropriate. Accordingly, we request that you produce all responsive documents or information withheld pursuant to these improper objections.

Gerard J. Stief
April 13, 2007
Page 3

**KIRKLAND & ELLIS LLP**

A.  **Documents and Information Related to the Maintenance, Inspection, and Repair of Metrorail Trains.**

WMATA has not produced a single maintenance, inspection, or repair record for the Metrorail train at issue and has failed to identify a single employee responsible for the maintenance, inspection, or repair of that train. (*See* WMATA's Resps. to Reqs. Nos. 3, 30.) Furthermore, WMATA has failed to produce any documents sufficient to show WMATA's preventive maintenance schedule for train doors and "doors closing" warning chimes and any inspections or compliance with that schedule with respect to the train at issue. (*See* WMATA's Resps. to Reqs. Nos. 24, 25.) WMATA claims that it "has requested maintenance records for Train No. 102 from storage and will supplement this response for a reasonable period before and after the incident in issue when they are received." (WMATA's Resp. to Req. No. 3.) This excuse for the failure to comply with these requests is unacceptable. The Plaintiff has already accommodated WMATA by agreeing to a three-week extension to answer her discovery requests. As a result, WMATA has had *nearly two months* to collect these records. And WMATA has offered no other legitimate objections or explanations for withholding the requested information.

WMATA has also failed to comply with Plaintiff's requests for maintenance records for trains operating on the Shady Grove Red Line between 7:30 p.m. and 10:30 p.m. on December 25, 2003; for documents showing inspections and compliance with the preventive maintenance schedules for those trains; and for documents identifying the employees responsible for the maintenance of those trains and the other trains on the Shady Grove Red Line. (*See* WMATA's Resps. to Reqs. Nos. 7, 23, 26, 31, 33.) WMATA objects to these requests on various grounds including "overbreadth and burdensomeness," and "not limited in time, and not otherwise calculated to lead to discovery of admissible evidence." (WMATA's Resps. to Reqs. Nos. 7, 23, 26, 31, 33.) These objections are without merit. The maintenance and condition of the Metrorail train at issue are issues central to this litigation. WMATA has no legitimate basis to refuse discovery into these areas.

B.  **Requests Nos. 5, 9 -- Personnel Records.**

Requests Nos. 5 and 9 seek all personnel records (other than employee benefit records), including documents related to complaints or disciplinary action, for the operator of the Metrorail train at issue and for each train operator operating on the Shady Grove Red Line at Gallery Place Metro station between 7:30 p.m. and 10:30 p.m. on the night of the incident. (*See* Pl.'s First Req. for Docs. Nos. 5, 9.) WMATA refuses to produce documents responsive to these requests on the grounds that they seek "confidential information related to an employee ... may seek information protected by WMATA's self-evaluative privilege [and seek] information that is not reasonably calculated to lead to the discovery of admissible evidence." (WMATA's Resps. to Reqs. Nos. 5, 9.) WMATA also objects "on grounds of overbreadth and burdensomeness." (WMATA's Resp. to Req. No. 9.) These objections are baseless. First, WMATA states no basis for its assertion that the self critical analysis privilege (or the so-called "self-evaluative

privilege") extends to personnel records, or disciplinary actions taken against employees. WMATA is not permitted to withhold non-privileged information that is "relevant to the claim or defense of any party ... [and] appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). Second, as you are aware, even if there is a plausible privilege at issue (which there is not), WMATA is required under FED. R. CIV. P. 26(b)(5)(A) to provide a privilege log so that your claims of privilege may be assessed. (*See also* Pl.'s First Req. for Prod. of Docs. Defs. and Instructs. No. 12.)

The information sought by these requests is relevant and discoverable. Employee personnel records, particularly those records showing complaints or instances of disciplinary action related to this incident, are clearly relevant to locating the still-unidentified train operator and to the Plaintiff's claim that the operator acted negligently. In addition, as indicated above, the requested three-hour time frame is reasonable and necessary.

    C.    **Request No. 10 -- WMATA Employees On Duty.**

Request No. 10 seeks documents sufficient to identify all WMATA employees on duty or otherwise present at the Gallery Place Metro station on the evening of the incident between 7:30 p.m. and 10:30 p.m. (*See* Pl.'s First Req. for Docs. No. 10.) WMATA identifies only one such employee—Transit Police Officer A.M. Loney—and claims that it is "attempting to establish the identity of the station managers on duty, and will supplement this response." (WMATA's Resp. to Req. No. 10.) WMATA also refuses to respond fully to this request because it "is overly broad, unduly burdensome, and is not reasonably calculated to lead to the discovery of admissible evidence." (WMATA's Resp. to Req. No. 10.)

WMATA's failure to respond to this request fully and in a timely fashion is unacceptable. Again, WMATA has had nearly two months—including a three-week extension—in which to determine the identities of the station managers and the other employees on duty. The information sought is directly relevant to determining which employees may have witnessed (or should have witnessed) the incident and which employees were responsible for the safety of the passengers exiting at Gallery Place that evening. And, as indicated above, the requested time frame is reasonable and necessary.

    D.    **Requests Nos. 11, 13, 14, 15, 16, 17, 38, 39 -- WMATA Policies and Procedures.**

Request No. 11 seeks documents sufficient to show the procedures for handling Metrorail rider complaints, including the procedures for processing, filing, and maintaining records of "comment cards." (*See* Pl.'s First Req. for Docs. No. 11.) WMATA's response is baffling. Nowhere in the two-page excerpt from the Metrorail Safety Rules and Procedures Handbook that WMATA references in response to this request is there a single word about passenger complaints or comment cards. Instead, the excerpt is primarily concerned with the treatment of employee injuries, employee fire protection responsibilities, and the responsibility of supervisors to provide a "safe and healthful work environment" for their employees. Plainly,

this document is completely unresponsive and we ask that you provide documents responsive to this request.

Requests Nos. 13 and 14 seek documents relating to substance abuse violations by the operator of the train at issue and for each train operator operating on the Shady Grove Red Line at Gallery Place Metro station between 7:30 p.m. and 10:30 p.m. on the night of the incident. (*See* Pl.'s First Req. for Docs. Nos. 13, 14.) Requests No. 15 and 16 seek documents relating to substance abuse violations by WMATA employees with responsibilities for the maintenance, inspection, or repair of the train at issue and for each train operating on the Shady Grove Red Line at Gallery Place Metro station between 7:30 p.m. and 10:30 p.m. (*See* Pl.'s First Req. for Docs. Nos. 15, 16.) WMATA has failed to produce *any* documents responsive to these requests and claims that it is "unaware of any such violation related in any way to the instant case." (WMATA's Resps. to Reqs. Nos. 13, 14, 15, 16.) WMATA objects that the information requested "is overly broad, unduly burdensome, not limited in time, invasive of employee confidentiality and applicable law, and is not reasonably calculated to lead to the discovery of admissible evidence." (WMATA's Resps. to Reqs. Nos. 13, 14, 15, 16.) These objections are without merit. WMATA cites no privilege, nor any other "applicable law," that could form a legitimate basis for withholding information responsive to these requests. Furthermore, the information sought is directly relevant to Plaintiff's claims that the train operator at issue was negligent and that the train at issue was negligently maintained or inspected. Finally, these requests contain explicit time limitations and, as indicated above, the three-hour time frame requested is reasonable and necessary.

Request No. 17 seeks documents sufficient to show the proper procedures for investigating and processing complaints or claims of physical injury to or property loss by Metrorail passengers. (*See* Pl.'s First Req. for Docs. No. 17.) WMATA refuses to produce documents responsive to this request because "the information requested is overly broad, unduly burdensome ... protected under the attorney-client privilege and work product doctrine ... [and] is not reasonably calculated to lead to the discovery of admissible evidence." (WMATA's Resp. to Req. No. 17.) The assertion that WMATA's policies and procedures relating to investigating and processing complaints regarding injuries to its passengers are protected from disclosure on the basis of the "attorney-client privilege" or the "work product doctrine" is simply frivolous. Not surprisingly, WMATA has not even attempted to provide a foundation for the assertion of any privilege.

The information requested is directly relevant to ascertain which employees at WMATA may have information relevant to Ms. Preston-Killingham's case and what documents WMATA may have generated with regard to her case. Accordingly, we request that you withdraw your privilege objections and produce all responsive documents.

Request No. 38 seeks documents sufficient to show WMATA's policies and procedures relating to the safety of disabled passengers, and Request No. 39 seeks all documents relating to any training or instruction Metrorail train operators receive regarding the safety of disabled passengers. (*See* Pl.'s First Req. for Docs. Nos. 38, 39.) WMATA has failed to produce a single document in response to either of these requests. Instead, WMATA "objects on

Gerard J. Stief
April 13, 2007
Page 6

**KIRKLAND & ELLIS LLP**

grounds of overbreadth and burdensomeness" and claims that it will "supplement this request upon receipt of additional information." (WMATA's Resps. to Reqs. Nos. 38, 39.) These objections are baseless. There is no excuse for WMATA's failure to produce the responsive documents it possesses in a timely fashion given the nearly two months WMATA has had to comply.

    E.    **Requests Nos. 18, 19 -- Complaints of Injury and Property Loss.**

Request No. 18 seeks documents sufficient to show the number of complaints of physical injury and property loss arising from incidents in which the doors of a Metrorail train closed on any person. (*See* Pl.'s First Req. for Docs. No. 18.) Request No. 19 requests all documents relating to personal injuries sustained by passengers arising from the operation or malfunction of Metrorail train doors and "doors closing" warning chimes. (*See* Pl.'s First Req. for Docs. No. 19.) WMATA refuses to produce documents responsive to these requests on the grounds that they are "overly broad, irrelevant, burdensome, and not limited in time," and that the information sought "is not reasonably calculated to lead to the discovery of admissible evidence." (WMATA's Resps. to Reqs. Nos. 18, 19.) The information requested is clearly relevant to determining the existence of a dangerous condition of the Metrorail train door system and WMATA's notice thereof. In addition, these requests, like all of the Plaintiff's requests, have explicit time limitations. (*See* Pl.'s First Req. for Prod. of Docs. Defs. and Instructs. No. 16.) We therefore request that you produce all responsive documents.

    F.    **Requests Nos. 20, 22, 29, 32; Interrogatory Nos. 3-4 -- Training and Instruction of Metrorail Train Operators.**

Request No. 20 seeks all documents relating to the training or instruction Metrorail train operators receive regarding the safe operation of train doors and "doors closing" warning chimes, while Request No. 22 seeks each Notice of Operators relating to the doors and chimes. (*See* Pl.'s First Req. for Docs. Nos. 20, 22.) Interrogatory No. 3 requests WMATA to describe in detail the proper procedure and safety precautions Metrorail operators must follow in closing the train doors. (*See* Pl.'s First Interrogs. No. 3). The only document WMATA has produced in response to these requests and the interrogatory is a three-page excerpt from the "Quick Reference Guide" to the Initial Train Operator Training Handbook—an excerpt which says nothing at all about the "doors closing" warning chimes. WMATA then refuses to produce any additional information because the requests are "overly broad, irrelevant, burdensome, not limited in time, and not reasonable [sic] calculated to lead to the discovery of admissible evidence." (WMATA's Resps. to Reqs. Nos. 20, 22.) This response is clearly inadequate and does not satisfy WMATA's obligations under the Federal Rules.

Requests Nos. 29 and 32 seek all documents relating to the doors and "doors closing" warning chimes of the Metrorail train at issue, including, but not limited to, memoranda, emails and other communications, as well as documents relating to the operation of and safety mechanisms associated with the doors. (*See* Pl.'s First Req. for Docs. Nos. 29, 32.) Interrogatory No. 4 requests that WMATA describe in detail any safety mechanisms designed to alert a Metrorail train operator to an obstruction preventing proper closure of the doors and the

Gerard J. Stief
April 13, 2007
Page 7

**KIRKLAND & ELLIS LLP**

proper procedure to ensure that such obstructions have been cleared. (*See* Pl.'s First Interrogs. No. 4.) In response, WMATA has produced only the three-page excerpt from the "Quick Reference Guide" and a one-sentence reference to the Rail Car Maintenance Department. This is inadequate. The Plaintiff requested ***all documents*** and a detailed response. WMATA has produced no communications of any kind, no documents related to the "doors closing" warning chimes, and no documents describing the procedure for clearing obstructions from the doors.

G.   **Requests Nos. 34, 36 -- Documents Relating to the Plaintiff.**

Request No. 34 seeks all documents related to the Plaintiff, while Request No. 36 requests all documents relating to any claim file relating to this incident. (*See* Pl.'s First Req. for Docs. Nos. 34, 36.) WMATA objects to these requests "on grounds of attorney-client privilege and the work product of counsel and the claims office." (WMATA's Resps. to Reqs. Nos. 34, 36.) To the extent that WMATA is withholding privileged documents responsive to these requests, those documents must be recorded in a privilege log so that your claims of privilege may be assessed. Other than the MTPD Event Report, those documents WMATA has produced that clearly relate to Ms. Preston-Killingham or her claim file amount to a mere three pages (along with a seven-page document that is almost wholly unintelligible). Please confirm that WMATA has produced all non-privileged documents in response to these requests.

H.   **Request No. 37; Interrogatory No. 1 -- WMATA's Defenses.**

Request No. 37 seeks all documents WMATA intends to use to support its affirmative defenses of sovereign/governmental immunity, contributory negligence, and assumption of risk. (*See* Pl.'s First Req. For Docs. No. 37.) Interrogatory No. 1 requests WMATA to describe in detail the basis for its affirmative defense of sovereign/governmental immunity. (*See* Pl.'s First Interrogs. No. 1.) In response to Request No. 37, WMATA references its attached exhibits. (*See* WMATA's Resp. to Req. No. 37.) There is not a single document in WMATA's less-than-voluminous production that has anything at all to do with sovereign/governmental immunity, contributory negligence, or assumption of risk. Furthermore, WMATA's one-sentence response to Interrogatory No. 1 is anything but detailed: "WMATA has immunity for governmental functions, including, but not limited to, design activities." (WMATA's Resp. to Interrog. No. 1.) This response is clearly inadequate and non-responsive.

\*   \*   \*   \*   \*

Each of Plaintiff's requests seeks relevant information and documents that must be produced. WMATA has no legitimate basis to deny Plaintiff of this discovery. We therefore request that WMATA produce all non-privileged, responsive documents pursuant to each request and interrogatory no later than April 27, 2007 (three months after the original discovery was served). To the extent that WMATA withholds documents responsive to the requests on the basis of privilege, please provide a privilege log detailing the basis for the assertion of privilege.

Gerard J. Stief
April 13, 2007
Page 8

**KIRKLAND & ELLIS LLP**

      Please let me know the earliest date that you are available to meet and confer regarding the deficiencies in WMATA's production. I propose a meet and confer regarding these issues on Monday, April 16th at 4:30 p.m., or, alternatively, Tuesday, April 17th at 10:30 a.m.

                                            Sincerely yours,

                                            Sean C. Abouchedid
                                            Admitted only in New Jersey and practice is
                                            supervised by principals of the Firm

SCA/mch