UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARILYN PRESTON-KILLINGHAM )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WASHINGTON METROPOLITAN )<br>AREA TRANSIT AUTHORITY )<br>)<br>Defendant. ) | Case No. 1:06CV00074-AK |

**DEFENDANT WMATA'S MEMORANDUM
OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S
<u>MOTION TO COMPEL</u>**

**Introduction**

Defendant Washington Metropolitan Area Transit Authority ("WMATA") hereby submits its Opposition to Plaintiff's Motion to Compel. Contrary to the allegation at page 3 of Plaintiff's motion, Plaintiff was not "seriously injured" in the alleged incident of December 25, 2003. Plaintiff alleges that, as she exited Metrorail Red Line train at the Gallery Place Station, in her motorized wheelchair, the train doors closed on her. She declined medical attention, and first sought medical attention two days later on December 27, 2003 at the Washington Hospital Center ("WHC"). The WHC Discharge Diagnosis states "contusion to both shoulders, Lt wrist, rt knee & an[kle]". A contusion is a bruise. Her medical bills received to date appear to be in the $1,800 range. Notwithstanding the fact that this case more properly belongs in the Small Claims Division of the D.C. Superior Court, Plaintiff elected to file it in this Court.

Contrary to Plaintiff's allegations, WMATA has gone to great lengths and

expense to respond to Plaintiff's discovery requests. It is extremely disingenuous for Plaintiff to state at page 2 of her motion that WMATA has only produced 56 pages of documents when, on May 14, 2007, two days <u>before</u> Plaintiff filed this motion, WMATA produced for inspection approximately 3,240 pages of maintenance records related to five separate Metrorail trains. These 3 to 4 year old records had been retrieved from storage. After retrieving these documents, counsel for Plaintiff requested that all these records related to these five trains be copied. Copying of these 3,420 pages has been completed, and WMATA had all of these pages delivered to counsel for Plaintiff on May 25, 2007.

The instant discovery dispute primarily centers on Plaintiff's totally unreasonable request that WMATA provide voluminous maintenance records for each car on every Red Line Metrorail train that went through Gallery Place in the direction of Shady Grove from 9:00 p.m. to 10:30 p.m. on December 25, 2003. Originally, Plaintiff requested maintenance data on all such trains from 6:00 p.m until midnight. Plaintiff's argument is predicated on her position that she does not know the car number of the train on which she was riding, and purportedly does know not when the incident occurred.

The fact is that there is ample evidence that the alleged incident occurred within a few minutes of 10:00 p.m. That is the time listed on the Transit Police Event Report attached to Plaintiff's First Amended Complaint. Officer Loney, who investigated and wrote the report, has been deposed and supported the accuracy of her report. "2200"

hours, or 10:00 p.m., is the time listed on the WHC medical records when Plaintiff first sought treatment on December 27, 2003, a time that could only have been provided by Plaintiff herself. The WMATA Maintenance and Reliability Incident Report indicates that the incident occurred at "2204" hours, or 10:04 p.m.

WMATA has produced Train Interval Sheets for the date in issue showing that the Red Line trains were running on a schedule approximately 15 minutes apart during the period in question. These Train Interval Sheets also identify the train operators. WMATA also produced a document called "ROCS SPOT Report" showing when each of these Shady Grove-bound trains entered and departed the Gallery Place Station, as well as when the doors opened and shut. This report shows that a train entered the station at "22:00:16" (10:00 and 16 seconds) and left at "22:01:45" (10:01 and 45 seconds). This places that train precisely within the time of the Transit Police report, WHC medical records, and the Vehicle Incident Report referenced above. Notwithstanding the fact that the relevant evidence points to the train arriving at Gallery Place at "22:00:16", WMATA agreed to produce the maintenance records for the two trains before (arriving at Gallery Place at "21:30:21" and "21:15:07", respectively) and the two subsequent trains (arriving at Gallery Place at "22:15:07" and "22:31:43", respectively)[1]. Significantly, prior to 9:30 p.m., the trains were on

---

[1] Of the 3,420 pages of maintenance records provided, WMATA late yesterday discovered that it appears that the records for cars including 3146, 3217, 3097, and 3153 (together with their respective "pairs") related to Train Nos. 203 and 204 which, although originally requested by Plaintiff, were not part of the five trains for which WMATA agreed to produce maintenance records. Consequently, WMATA is in the process of attempting to retrieve the records for Trains Nos. 104 and 110 and will provide these additional records if located.

significantly shorter headways of approximately 6-8 minutes. Thus, to go back to 9:00 p.m., WMATA would be dealing with more trains per half-hour than it would for the 10:00 p.m. time window. This would add considerably to the burdensomeness of the task.

Finally, Plaintiff neglected to point out that she has been given two extensions of time by WMATA to respond to WMATA's First Set of Interrogatories and Requests for Production. As a result, Plaintiff's deposition, which the parties were attempting to schedule in May, is now scheduled for June 14, 2007.

### Specific Objections And Argument[2]

A.   <u>Identity of Trains and Operators (Request Nos. 2, 4, 6, 8)</u>.

This issue has been largely addressed in the Introduction, <u>supra</u>. WMATA has identified all Red Line Trains traveling in the Shady Grove direction for the referenced time period, with operators, through the Train Interval Sheet provided. WMATA has also provided a Station Manager's Log for the referenced date.

B.   <u>Maintenance, Inspection, and Repair (Request Nos. 3, 7, 23-26, 30-31, 33)</u>.

<u>See</u> the Introduction, <u>supra</u>. WMATA has supplied 3,420 documents specifically related to the maintenance of 20 cars comprising 5 trains as noted above for the 2003-04 time period. <u>See</u> <u>also</u> footnote 1, <u>supra</u>.

---

[2] For ease of reference, WMATA generally is following the summary at pages 4-5 of Plaintiff's motion.

C. <u>Policies and Procedures (Request Nos. 13-16)</u>.

Plaintiff seeks an extraordinarily broad range of drug testing information relating to any substance abuse policy by any train operator working that evening or maintenance personnel over a five-year period. This would involve an insurmountably burdensome task of reviewing records of scores, if not hundreds, of employees without one iota of support that there was any such issue. Plaintiff is on an unwarranted fishing expedition. Moreover, to comply with this request would be in clear violation of employees' privacy interests. Moreover, Plaintiff has failed to meet any of the very limited exceptions to the general rule of nondisclosure of such information mandated by 42 U.S.C. § 290dd-2.

D. <u>Policies and Procedures re Investigation of Claims (Request Nos. 11, 17, 38, 39)</u>.

In Request No. 11, Plaintiff seeks documents showing the procedures for handling Metrorail rider complaints such as "Comment Cards" submitted by passengers. WMATA provided an excerpt from the Metrorail Safety Rules and Procedures Handbook. This is the only document WMATA is aware of that is responsive to this request. In Request No. 17, Plaintiff, apparently dissatisfied with the handling of the case by WMATA's claims office, seeks confidential information relating to WMATA's claims handling procedures. The claims office was part of WMATA's Office of General Counsel at the relevant time. Such a request has absolutely no bearing on what is at issue in this action, and clearly implicates the attorney-client privilege and the work product doctrine. With respect to Request Nos.

38 and 39, WMATA is forwarding at this time material from the Train Operating Training Program relating to "Assisting Senior Citizens and Customers with Disabilities". Moreover, a separate privilege log is not required under Fed. R. Civ. P. 26(b)(5) where, as here, WMATA has sufficiently described the categories of documents for which privilege is asserted.

    E.    <u>Personnel Records (Request Nos. 5,9)</u>.

Plaintiff has failed to date to identify in this litigation what train she was riding on the date in issue. She now seeks a broad range of confidential documents related to train operators who were operating Red Line trains on that evening for 1½ hours. The absurdity of Plaintiff's request is underscored by the fact that she is seeking such information for not only a large number of train operators, but also maintenance personnel who worked on any of these cars over a five-year period. The fact that 3,240 maintenance documents have already been produced emphasizes the impossibility of such a task. <u>See</u> Introduction, <u>supra</u>. What Plaintiff overlooks in her fishing expedition is that WMATA is immune from claims for negligent hiring, training, and supervision. <u>Burkhart v. WMATA</u>, 112 F.3d 1207, 1216-17 (D.C. Cir. 1997). The real issues in this case are whether WMATA's train operator was negligent with respect to the events of December 25, 2003, and whether Plaintiff was negligent or assumed the risk. Anything else is irrelevant and unduly burdensome.

    F.    <u>Employees on Duty on Date of Incident (Request No. 10)</u>.

WMATA has produced the Train Interval Sheets showing the Train Operators

and the relevant Station Manager Log for that date. WMATA is providing contemporaneously with this filing information related to custodians who possibly were on duty. Custodians frequently split time with two stations. Transit Police Officer Loney, who responded to the scene, has already been deposed. WMATA is in the process of making one additional attempt to see if any other employees can be identified.

      G.     <u>Door Closing Complaints (Request Nos. 18-19)</u>.

Plaintiff, without any limitation on time and scope, seeks information related to door closing injuries or property damage. Metrorail has been in existence for 31 years, and transports up to 700,000 riders every workday. Passengers regularly attempt to beat the closing doors, and attempt to treat the doors like they are retractable elevator doors, which Metrorail car doors are not. Once again, Plaintiff is fishing for totally irrelevant information which would be extremely burdensome to produce. <u>See</u> <u>also</u> <u>Burkhart</u>, <u>supra</u>.

      H.     <u>Training and Instruction of Train Operators Re Door Closing (Request Nos. 20-21); (Interrogatory Nos. 3-4)</u>.

In response to Plaintiff's request for training-related materials, WMATA provided Plaintiff with relevant excerpts from the Initial Operator Training Handbook. WMATA added a partial objection because the requests are overly broad, in no way limited in time in the 31-year operating history of Metrorail, etc. Moreover, Request No. 21 is in no way limited to Metrorail train car doors and warning chimes, the issues in this case.

    I.    <u>Notice to Operators Related to Train Doors and Chimes (Request No. 22)</u>.

<u>See</u> H, <u>supra</u>. As noted, WMATA has provided relevant excerpts from the Initial Train Operator Training Handbook.

    J.    <u>"Doors Closing" Warning Chimes (Request Nos. 29, 32); (Interrogatory No. 4)</u>.

<u>See</u> H, <u>supra</u>. Plaintiff requests specific information related to the train in issue. To date, Plaintiff has been unable to identify which train she was riding, and her deposition is set for June 14, 2007. As noted above, WMATA has provided relevant excerpts from the Training Handbook.

    K.    <u>Claims File (Request Nos. 34, 36)</u>.

Plaintiff has, completely without regard to the attorney-client and work product privileges, as well as the privilege for materials gathered in anticipation of litigation, requested "all documents relating to" her (Request No. 34) and her entire claims file (Request No. 36). Such a request is completely inappropriate and undermines the above-referenced privileges. <u>See</u> also <u>Hickman v. Taylor</u>, 329 U.S. 495, 509-14 (1947). The claims office was actually part of WMATA's Office of General Counsel at the time Plaintiff dealt with them. The work product of both counsel and the claims office is sacrosanct.

    L.    <u>Affirmative Defenses (Request No. 37); (Interrogatory Nos. 1, 2)</u>.

WMATA has provided clear, concise explanations of its affirmative defenses. (Interrogatory Nos. 1, 2). Moreover, with respect to Request No. 37, WMATA reserves the right to utilize any documents it produces in discovery at trial, and will

identify the exhibits it will utilize in the pretrial statement.

## CONCLUSION

WMATA has diligently responded to Plaintiff's discovery request and, as noted above, continues to do so, such as with the additional, voluminous maintenance records. Plaintiff has completely overreached with her discovery requests. The motion to compel should be denied.

## REQUEST FOR HEARING

WMATA requests a hearing on this motion.

Respectfully submitted,

**WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY**

/s/
Gerard J. Stief #925933
Associate General Counsel
600 Fifth Street, N.W.
Washington, D.C. 20001
(202) 962-1463
Attorney for Defendant WMATA

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing **Defendant WMATA's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Compel** was electronically transmitted and mailed first class, postage prepaid, this 30th day of May 2007, to:

Patrick M. Bryan
Eunnice Eun
Kirkland & Ellis
655 Fifteenth Street, NW
Suite 1200
Washington, DC 20005

/s/
Gerard J. Stief

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARILYN PRESTON-KILLINGHAM )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WASHINGTON METROPOLITAN )<br>  AREA TRANSIT AUTHORITY )<br>)<br>Defendant. ) | Case No. 1:06CV00074-AK |

## ORDER

Upon consideration of Plaintiff's Motion to Compel, and the Opposition thereto, it is by the Court this _____ day of _____, 2007:

ORDERED, that the motion is denied.

_____
United States Magistrate Judge

Copies (electronically) to:

Patrick M. Bryan
Eunnice Eun
Kirkland & Ellis
655 Fifteenth Street, NW
Suite 1200
Washington, DC 20005

Gerard J. Stief
Associate General Counsel--WMATA
600 Fifth Street, N.W.
Washington, D.C.  20001