IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARILYN PRESTON-KILLINGHAM, | |
| Plaintiff, | Civil Action No. 1:06-CV-00074-AK |
| v. | Magistrate Judge Alan Kay |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, a/k/a WMATA, | |
| Defendant. | |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO COMPEL**

WMATA does not dispute, and apparently concedes, that it has failed to produce a single responsive document to a substantial number of Plaintiff's requests, including documents and information concerning:

- violations of WMATA's policies and procedures by Metrorail train operator(s) of, and maintenance personnel working on, the train(s) involved in the injury-causing incident (Request Nos. 13, 14, 15, 16);

- WMATA's policies and procedures regarding the investigation and processing of complaints of injury by its passengers (Request Nos. 11, 17);

- personnel records of train operators and maintenance personnel who were (or were likely to be) involved in the injury-causing incident (Request Nos. 5, 9);

- complaints of injury by passengers of Metrorail similar to that of Plaintiff (Request Nos. 18, 19);

- "Notices to Train Operators" relating to the doors and "doors closing" warning chimes (Request No. 22);

- the "doors closing" warning chimes of the Metrorail train at issue and the proper procedures for insuring that any obstruction preventing the proper closure of Metrorail doors has been cleared (Request Nos. 29, 32; Interrogatory No. 4);

- Plaintiff's claim file(s) (Request No. 36); and,

- the bases for WMATA's affirmative defenses and documents it intends to use in support of its affirmative defenses (Request No. 37; Interrogatory Nos. 1, 2).

Nor does WMATA dispute that it has failed to fully comply with Plaintiff's remaining requests.[1]

Instead, in its opposition brief, WMATA repeats blanket and unsubstantiated relevance, burden, and "privilege" objections to collecting and producing responsive documents to each of Plaintiff's requests, and contends that the few short excerpts of documents that it has elected to produce and a collection of (apparently non-responsive[2]) maintenance records — in total, ***one box of documents*** — are "good enough" and sufficiently responsive to each of Plaintiff's requests. They are not and WMATA's assertion to the contrary has no basis in either law or fact.

*First*, WMATA's wholly unsubstantiated objections add nothing and fail to satisfy WMATA's burden under the Federal Rules. *See*, *e.g.*, *Athridge v. Aetna Cas. and Sur. Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998) (noting in negligence action that "blanket objections" as to relevance and burden "do not comply with Fed. R. Civ. P. 34(b) and courts disfavor them.").

*Second*, WMATA's opposition underscores and, indeed, confirms that WMATA has no legitimate basis to refuse the discovery requested. For example, as WMATA's opposition brief and internal records demonstrate, WMATA's claim that Plaintiff's request for certain additional maintenance records is "totally unreasonable" and burdensome is wholly unfounded: based on WMATA's production of certain maintenance records to date (*i.e.*, records that were produced

---

[1] Incredibly, WMATA contends that it need not comply with its discovery obligations because this case — in WMATA's view — "more properly belongs in the Small Claims Division of the D.C. Superior Court" because Plaintiff's injuries amounted to (according to WMATA) simply a "bruise." (Opp'n at 1.) Not only is WMATA's view of Plaintiff's injuries irrelevant to the matter at hand, it is wholly without basis in fact. Plaintiff — a disabled seventy-four year old woman — suffered from severe physical and emotional injuries as a direct result of the incident and WMATA's negligence, injuries from which she still suffers today nearly four years after the incident.

[2] In a footnote to its opposition brief, WMATA appears to admit that the maintenance records it produced two weeks after the instant motion was filed are ***non-responsive*** and that WMATA is still "attempting to retrieve the [relevant] records." (Opp'n at 3 n.1.) To date, WMATA has not produced any additional records. And because the maintenance records are organized by car number, rather than by train number (and WMATA has not provided documentation indicating which cars comprised which trains), Plaintiff is at a loss to determine which (if any) of the records are responsive.

only after the instant motion was filed), the additional maintenance records sought would not likely fill a single box. Thus, WMATA's claims that Plaintiff's discovery requests would impose "insurmountable burden[s]" are wholly without merit.

In short, WMATA's opposition brief neither substantiates its claims of burden nor its blanket assertions of "privilege." WMATA therefore has failed to justify its failure to produce documents responsive to Plaintiff's requests. Accordingly, Plaintiff respectfully requests that WMATA be compelled to produce documents responsive to Plaintiff's First Request for Production of Documents Numbers 2-11, 13-26, 29-34, 36-39, and to answer Plaintiff's First Set of Interrogatories Numbers 1-4 (collectively, "Requests").

**I.    WMATA DOES NOT DISPUTE THAT IT HAS FAILED TO COLLECT AND PRODUCE ALL DOCUMENTS RESPONSIVE TO REQUEST NOS. 5, 9, 11, 13-22, 29, 32, 36-39.**

As an initial matter, WMATA attempts to mischaracterize Plaintiff's motion, that is, WMATA contends that Plaintiff's motion is "primarily" seeking the production of maintenance records. (Opp'n at 2.) It is not. As discussed in more detail below, WMATA has failed to produce *any* documents in response to a substantial number of Plaintiff's document requests, including Request Numbers 5, 9, 11, 13-19, 22, 29, 32, 36, and 37, and has failed to respond fully to a single interrogatory posed. (*See* Pl.'s Opening Mem. at 8.) WMATA, moreover, has unilaterally determined that the few excerpts of documents that it has produced in response to several other requests are essentially "good enough," Opp'n at 5, 7-8, and has refused to conduct a reasonable search for other responsive documents. WMATA thus has utterly defaulted on its obligations under the Federal Rules.

### A. WMATA Has Produced <u>No</u> Documents Relating To Violations Of Its Internal Policies And Procedures Or Certain Personnel Records Of Individuals That Were (Or Were Likely To Be) Involved In The Injury-Causing Incident (Request Nos. 5, 9, 13-16).

WMATA has failed to produce a single document in response to Request Numbers 5, 9, 13-16. WMATA, instead, contends that production of documents responsive to these requests would be "insurmountably burdensome" and "impossibl[e]," and claims that these requests are merely a "fishing expedition."[3] (Opp'n at 5, 6.) It is difficult to comprehend how violations of internal policies and safety regulations by WMATA employees that were (or were likely to be) involved in the injury-causing incident would not be relevant in a negligence case such as this, and, tellingly, WMATA provides no explanation. In any case, WMATA's blanket — and wholly unsubstantiated — burden objections add nothing and fail to satisfy WMATA's obligations under Rule 26. *See*, *e.g.*, *Athridge*, 184 F.R.D. at 191 ("[W]ith regard to [defendant's] burdensomeness objections, defendant merely states, in conclusory fashion, that the requests are unduly burdensome. That too is insufficient."); *Wainwright v. WMATA*, 163 F.R.D. 391, 395 (D.D.C. 1995). Rather, "[i]n order to satisfy its burden, [WMATA] must make a specific, detailed showing of how the [discovery sought] is burdensome." *Alexander v. FBI*, 192 F.R.D. 50, 53 (D.D.C. 2000). Accordingly, in order for this Court to entertain an "unduly burdensome" objection, WMATA must demonstrate "how the document [request] is 'overly broad, burdensome, or oppressive, ***by submitting affidavits or offering evidence which reveals the nature of the burden***.'" *Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, No. 04-

---

[3] In its responses to these requests, WMATA claimed that it was "unaware of any such violation related in any way to the instant case." (*See* WMATA's Resp. To Pl.'s Req. for Prod. at 5-6 (Request Nos. 13-16).) A litigant, however, is not entitled to close its eyes and claim that it is "unaware" of responsive documents. Rather, every litigant must conduct a reasonably diligent search for responsive documents. WMATA has not done so.

02201(RCL), 2007 WL 1020785, at *8 (D.D.C. Mar. 29, 2007) (emphasis added).  WMATA has not done so.

For the same reason, WMATA's purported "privacy" objections are without merit.  (*See* Opp'n at 5.)  WMATA has not sought a protective order pursuant to Rule 26(c), or otherwise substantiated its purported concern over the "privacy" of certain records.  Therefore, its objections are baseless.[4]

### B. WMATA Has Failed To Produce Documents Relating To Its Internal Policies And Procedures For Investigating Claims Of Injury And The Safety Of Passengers With Disabilities (Request Nos. 11, 17, 38, 39).

In response to Plaintiff's Request Numbers 11, 17, 38, and 39, WMATA selectively produced *excerpts* of only two documents — an excerpt from the Metrorail Safety Rules and Procedures Handbook, *see* Ex. A, and an excerpt from the "Quick Reference Guide" to the Initial Train Operator Training Handbook, *see* Ex. B.[5]  WMATA, however, has denied Plaintiff discovery of all other responsive documents on the basis that the information sought is "confidential" and that it "implicates the attorney-client privilege and work product doctrine." (Opp'n at 5.)  As an initial matter, it is inconceivable how internal business records relating to WMATA's procedures and policies could be considered "privileged" or "confidential," and

---

[4] WMATA also contends that "Plaintiff has failed to meet any of the very limited exceptions to the [so-called] general rule of nondisclosure of such information mandated by 42 U.S.C. § 290dd-2." (Opp'n at 5.)  However, it is not Plaintiff's burden, but WMATA's burden to demonstrate why discovery should be denied.  *See, e.g., Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 845 (D.D.C. 1996) ("A party opposing discovery bears the burden of showing why discovery should be denied.").  But, equally important, 42 U.S.C. § 290dd-2 has no application here; rather, the statute concerns records "relating to substance abuse . . . treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by *any department or agency of the United States*," 42 U.S.C. 290dd-2 (emphasis added), *i.e.*, ***not*** records of violations of internal policies of WMATA.

[5] Emblematic of WMATA's piecemeal approach to discovery in this case, two days after filing its opposition brief, WMATA produced two more excerpted documents — one related to Metrorail train door operation procedure, and one related to WMATA's training for assisting senior citizens and customers with disabilities.

WMATA provides no explanation. Equally important here, WMATA has failed to articulate any basis for these purported privileges, and has failed to provide a log or any description of the documents withheld on the basis of such purported privileges.

WMATA claims that it need not provide a log of documents withheld on the basis of any purported privilege because "WMATA has sufficiently described the categories of documents for which privilege is asserted." (Opp'n at 6.) WMATA's assertion is simply wrong. *See* Fed. R. Civ. P. 26(b)(5)(A); *see also Wainwright*, 163 F.R.D. at 395 (granting motion to compel production of a log "of documents withheld on privilege grounds, and the basis for the assertion of privilege.") Moreover, and contrary to its bald assertion, WMATA has neither "described the categories of documents" withheld, nor provided any information to support the assertion of any purported privilege. Therefore, WMATA has neither substantiated its claims of privilege nor set forth any basis to deny discovery regarding its internal policies and procedures.

   **C.**  **WMATA Has Produced No Documents Relating To Similar Complaints Of Injury (Request Nos. 18-19).**

WMATA contends that documents relating to similar incidents of physical injury are "irrelevant." (Opp'n at 7.) Such information, however, is directly relevant to Plaintiff's negligence claim and discoverable. *See Wainwright*, 163 F.R.D. at 395 (in negligence action, granting motion to compel production of document regarding other accidents involving injury similar to those alleged by plaintiff, and other "defects" or malfunctions similar to those alleged by plaintiff). Further, WMATA's assertion that these requests are unlimited in time and scope is simply false. Plaintiff's requests were (and are) expressly limited to the period from January 1, 2002 to present. (*See* Pl.'s First Req. for Prod. of Documents ¶ 16.)

6

**D.    WMATA Has Failed To Produce Documents Or Information Relating To Training And Communications Regarding The Safe Operation Of Metrorail Doors And "Doors Closing" Chimes (Request Nos. 20-22, 29, 32 and Interrogatory Nos. 3-4).**

In response to these seven requests, WMATA contends that Plaintiff's requests are "in no way limited in time in the 31-year operating history of Metrorail," that its production of an excerpt from the "Quick Reference Guide" (not even the full manual) of its "Initial Train Operator Training Handbook" is sufficient to meet its burden under Rule 26, and that it need not conduct a search for other responsive documents. (Opp'n at 7-8.) WMATA is wrong on all counts. *First*, as noted above, Plaintiff's requests are expressly limited to the period from January 1, 2002 to present. *Second*, it borders on the absurd for WMATA to maintain that it has fully responded to the above-referenced requests when, to take but one example, WMATA has not produced a single document that so much as mentions the "doors closing" warning chimes. *Third*, WMATA cannot unilaterally determine that an excerpt of one document is sufficient and close its eyes to all other responsive documents. Rather, Plaintiff is entitled to discovery of any documents "not privileged . . . relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1); *see also Tequila Centinela, S.A.*, 2007 WL 1020785, at *4 ("The scope of discovery itself is broad."). Thus, WMATA's objections to this discovery are without merit.

**E.    WMATA Has Failed To Produce Documents Relating To The Plaintiff (Request Nos. 34, 36).**

WMATA contends that all documents relating to Plaintiff and her claim — purportedly contained within WMATA's "claims office" — are "sacrosanct" or privileged because "[t]he claims office was [a] part of WMATA's Office of General Counsel at the time Plaintiff dealt with them." (Opp'n at 8.) On that basis, WMATA has refused to produce documents relating to Plaintiff or to her claim and has refused — contrary to Rule 26(b)(5)(A) — to produce a log of purportedly privileged documents. Yet, WMATA may not rest on unsubstantiated claims of

7

privilege.  *See, e.g.*, *Tequila Centinela, S.A.*, 2007 WL 1020785, at *9.  Indeed, even if WMATA's unsupported assertion regarding the "claims office" was true, it would not mean that every document relating to the Plaintiff or to her claim is privileged.  Equally important, there is no basis (and WMATA provides none) for WMATA's failure to collect any such documents and produce a log of all documents withheld on the basis of any purported privilege pursuant to Rule 26(b)(5)(A).  *See id.* (compelling production of a log of all documents withheld on the basis of privilege); *see also Wainwright*, 163 F.R.D. at 395 (granting motion to compel production of a log "of documents withheld on privilege grounds, and the basis for the assertion of privilege.").  Accordingly, WMATA's blanket objections on the basis of privilege should be rejected.

**II.    WMATA'S OBJECTIONS TO PRODUCING RESPONSIVE MAINTENANCE RECORDS ARE WITHOUT MERIT.**

WMATA contends that Plaintiff's request for maintenance and inspection records for certain trains operating at Gallery Place Station from 9:00 p.m. to 10:30 p.m. on December 25, 2003 is "totally unreasonable" because there is — in WMATA's view — "ample evidence" that the Plaintiff was injured "within a few minutes of 10:00 p.m." (Opp'n at 2.)  As a result, WMATA has agreed to produce only certain maintenance records for five trains operating at that time; one that arrived at approximately 10:00 p.m. and two trains that arrived immediately before and two trains immediately after 10:00 p.m.[6]  (Opp'n at 3.)  Importantly, in its opposition, WMATA — for the first time — disclosed that it did ***not*** produce records for each of these trains and is still "attempting to retrieve the [relevant] records." (Opp'n at 3 n.1.)  Thus, WMATA's boast that it has already produced over 3,000 pages of maintenance records (***one box*** of

---

[6]  WMATA, however, has failed to produce and has not agreed to produce any preventive maintenance and inspection schedules for the train cars at issue or any records showing compliance with such schedules.

8

documents) is just silly — the single box of maintenance records that it finally produced (nearly two weeks after the instant motion was filed) does not contain maintenance records responsive to Plaintiff's requests.

Furthermore, as WMATA is well aware, Plaintiff and other witnesses have stated that the incident occurred *earlier* than 10:00 p.m. and, as such, the precise time of the incident remains in dispute. WMATA nevertheless contends that a police report — written well after the incident — and a hospital admission form from two days after the incident are undisputable evidence that the incident occurred at 10:00 p.m. They are not. Nor is WMATA entitled to unilaterally determine which trains are relevant and which are not where the facts — as here — are disputed.

Equally important, as WMATA's opposition brief confirms, there is no basis for WMATA to refuse the discovery of the additional maintenance records sought on the grounds that it is unduly burdensome. The maintenance records that WMATA has agreed to produce — documents relating to five trains chosen by WMATA — amounted to *a single box* of documents. Based on WMATA's own records, Plaintiff's request for maintenance records from 9:00 p.m. to 10:30 p.m. would not impose any burden on WMATA: the additional records sought relate to, *at most, only three* additional trains.[7] (*See* Ex. A to Opp'n (purportedly showing that only trains 108, 202, and 109 arrived at the Gallery Place Station between 9:00 p.m. and 9:30 p.m., the period for which WMATA has refused to produce records).) If WMATA's prior production is any guide, by extrapolation, WMATA's additional production would amount to approximately one half of a single box of documents. This can hardly be characterized as "totally unreasonable" or an unduly burdensome "task" as WMATA contends. (Opp'n at 3, 4.)

---

[7] As demonstrated below, it is unclear precisely how many trains arrived during the relevant time period because the documents WMATA produced are unclear and inconsistent on this point.

### III.  WMATA HAS FAILED TO ADEQUATELY IDENTIFY THE METRORAIL TRAIN AND OPERATOR(S) AT ISSUE.

In response to Plaintiff's Request Numbers 2, 4, 6, and 8, WMATA produced "Train Interval Sheets," *see* Ex. C, and a "ROCS SPOTS REPORT," *see* WMATA's Opp'n at Ex. A, purporting to list trains and operators operating on the Shady Grove Red Line on the evening of the incident. (Opp'n at 3-4.) These documents are deficient. *First*, neither document (nor any other document WMATA has produced) identifies the train whose doors injured the Plaintiff. *Second*, they do not clearly indicate: (1) on which line the listed trains were traveling; (2) at which stations the trains arrived and from which they departed; and (3) in which direction the trains were traveling. In other words, it is impossible to tell whether any of the train operators identified by WMATA were operating a train at the Gallery Place Station on the Red Line in the direction of Shady Grove between the hours of 9:00 p.m. and 10:30 p.m. — the place and approximate time of the incident.[8]

---

[8] Further, although WMATA claims that the "Train Interval Sheets" list the trains departing from Glenmont Station in the direction of Shady Grove, and that the "ROCS SPOTS REPORT" shows trains arriving and departing at Gallery Place, *see* Opp'n at 3, there are glaring inconsistencies between these documents. For example, according to the ROCS SPOTS REPORT (and based on WMATA's explanation of the coding), Train 202 arrived at Gallery Place, traveling in the direction of Shady Grove, at 9:08 p.m. on December 25, 2003. Yet, the Train Interval Sheet indicates that Train 202 did not leave the unidentified station (which WMATA claims is Glenmont) until 11:20 p.m., making it impossible, of course, for it to have arrived at Gallery Place at 9:08 p.m. WMATA offers no explanation of these inconsistencies and no explanation is available on the face of the documents produced.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court order WMATA to produce documents responsive to Plaintiff's Document Request Numbers 2-11, 13-26, 29-34, 36-39, and to compel answers to Interrogatory Numbers 1-4.

Dated: June 4, 2007                                                             Respectfully submitted,

                                                                     _/s/ Patrick M. Bryan_
                                                                     Patrick M. Bryan (D.C. Bar No. 490177)
                                                                     Eunnice Eun (D.C. Bar No. 500203)
                                                                     Kirkland & Ellis LLP
                                                                     655 Fifteenth Street, N.W., Suite 1200
                                                                     Washington, D.C. 20005
                                                                     (202) 879-5000 (Tel.)
                                                                     (202) 879-5200 (Fax)

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing *Plaintiff's Reply Memorandum of Law in Support of Motion to Compel* was served via ECF and First Class Mail on the following counsel of record:

> Gerard J. Stief
> Associate General Counsel
> Washington Area Metropolitan Transit Authority
> 600 Fifth Street, N.W.
> Washington, DC  20001

Dated this 4th day of June, 2007.

 */s/ Eunnice H. Eun*
Eunnice H. Eun